GLASS v. CROSSMAN.

1. JUDGMENT—RES JUDICATA—PROBATE COURTS—COLLATERAL ATTACK.

Orders of the probate court are judgments, *res judicata* of matters involved, and not open to collateral attack.

2. SAME—EXECUTORS AND ADMINISTRATORS—ALLOWANCE OF ACCOUNT.
Allowance of an account by the probate court is an adjudication of each item of it.

3. SAME—FINDING OF PROBATE COURT.

Finding by the probate court of payment of claims and residue is binding on interested parties and not open to collateral attack.

4. SAME—APPEAL ONLY REMEDY TO QUESTION FINDINGS OF PROBATE COURT.

Except on appeal, no other court may inquire into the sufficiency of testimony to determine whether it sustains findings and orders of the probate court, or even whether they were supported by any evidence.

5. EXECUTORS AND ADMINISTRATORS—EQUITY—JURISDICTION—FRAUD.

Only procedure by which a court of equity may inquire into an account of executors allowed by orders of the probate court is on bill to set aside orders for fraud.

6. SAME—ORDERS OF PROBATE COURT—RES JUDICATA—OWNERSHIP OF BANK STOCK.

Proceedings in the probate court in which certificate of bank stock was inventoried as asset of a decedent's estate, new certificate issued in name of executor, and in final account such stock was listed and assigned to the estate of her husband resulted in orders *res judicata* on the matter of ownership of the stock which could not be collaterally attacked in bank receiver's suit to collect assessments.

7. CORPORATIONS—TRANSFER OF STOCK—INDORSEMENT IN BLANK—DELIVERY.

Indorsement in blank by record holder of bank stock and delivery to decedent prior to her death was a valid transfer of such stock.

8. SAME—INDORSEMENT OF STOCK IN BLANK—POSSESSION—BURDEN OF PROOF.

Possession of stock certificates indorsed in blank is *prima facie* evidence of ownership in the possessor, and the burden of producing evidence on the question of ownership rests upon the person disputing such ownership.

9. ESTATES OF DECEDENTS—TITLE TO PERSONAL PROPERTY.

Title to personal property of a decedent, testate or intestate, vests in the executor or administrator, until the estate is fully settled and distributed, or until he parts with title.

10. SAME—EQUITABLE TITLE.

The equitable title to personal property of a decedent is in the heirs who hold it subject to the rights of creditors and the expenses of administration.

11. WILLS—VESTING OF LEGAL ESTATE—RELATION TO DEATH.

When the legal estate vests in the legatees it relates back to the death of the testator.

12. EXECUTORS AND ADMINISTRATORS—PASSAGE OF LEGAL TITLE OF PERSONAL PROPERTY IN ADMINISTRATION OF AN ESTATE.

Upon acceptance of the trust there vests in the administrators or executors of an estate, as of the date of the death, title to all personal property belonging to the estate in the right

of others for the proper administration of the estate and for distribution of the residue, as the decree of distribution confers no new right but identifies the property remaining and evidences right of possession in the heirs or legatees and requires the administrators or executors to deliver it to them; such legal title so given relating back to the date of the death.

13. WILLS—BANK STOCK—PASSAGE OF TITLE.

Upon the death of owner of bank stock who left her entire estate to her husband the equitable title to the residue of the estate passed immediately to her husband and when the legal title passed to his estate it related back to her death.

14. EXECUTORS AND ADMINISTRATORS—BANK STOCK—ASSESSMENT—PROBATE COURT ORDERS—RES JUDICATA.

Heirs and distributees of decedent's estate, comprised in part of bank stock inherited from his wife, who acquiesced in actions of the executor and orders of the probate court in accepting the bank stock and making it a part of the estate, may not question such authority in the executor in bank receiver's suit to collect assessment.

15. SAME—EXCHANGE OF SECURITIES—AUTHORITY.

Under will giving trustee authority to keep trust estate invested in good, safe, income-producing securities or property and to continue to hold in trust securities or property held by testator at his death, executor had authority to exchange stock in bank, received from estate of decedent's wife, for stock in consolidated bank.

16. BANKS AND BANKING—ASSESSMENT ON STOCK HELD BY DECEDENT'S ESTATE—LACHES—ESTOPPEL.

Bank's receiver was not barred by laches or estoppel from enforcing assessment on bank stock against executor of estate of owner and distributees where distribution of estate was made after demand upon executor by fact that suit was instituted about four years thereafter where no showing is made that any of the defendants were prejudiced by such delay.

17. EXECUTORS AND ADMINISTRATORS—PERSONAL LIABILITY OF REPRESENTATIVE FOR FAILURE TO DISPOSE OF LIABILITY BEFORE DISTRIBUTION.

An executor who settles an estate without making provisions for or disposing of a liability imposed by statute may, in a proper action seasonably brought, be held personally liable for devastavit.

18. BANKS AND BANKING—TRUST COMPANY AS EXECUTOR—PERSONAL
   LIABILITY FOR STOCK ASSESSMENT.
   Trust company which distributed assets of an estate for which
   it had been appointed executor and later trustee and ignored
   notice of an assessment on bank stock to which such assets
   were subject is personally liable for the assessment.

19. SAME—LIABILITY OF EXECUTOR AND DISTRIBUTEES OF ASSETS OF
   ESTATE SUBJECT TO ASSESSMENT.
   Distributees of estate who each received more than amount of
   assessment on bank stock made upon but ignored by executor
   before distribution of the estate were jointly and severally
   liable with the executor for the amount of the assessment.

Appeal from Kent; Brown (William B.), J. Submitted April 6, 1939. (Docket No. 28, Calendar No. 40,433.) Decided June 5, 1939.

Bill by Harry Glass, Sr., receiver of American Home Security Bank, against Mrs. E. J. Crossman and others to collect a stock assessment. Decree for defendants. Plaintiff appeals. Reversed and decree entered for plaintiff.

*McCobb & Heaney* (*John M. Dunham*, of counsel), for plaintiff.

*Smith, Strawhecker & Wetmore* (*Laurence D. Smith*, of counsel), for defendants.

SHARPE, J. The present action is a suit brought by the receiver of the American Home Security Bank, of Grand Rapids, Michigan, to enforce a 100 per cent. assessment against $510 aggregate par value of stock standing in the name of the Michigan Trust Company, trustee under the will of Earle L. Crossman, deceased. The facts are as follows: On October 12, 1930, Gertrude I. Crossman died, leaving a will by which she appointed the Michigan Trust Company executor and in which she named her. hus-

band, Earle L. Crossman, her sole legatee and devisee. The trust company under proper authority took possession of the assets of her estate including 30 shares of Security National Bank stock. Shortly thereafter the trust company as executor had the certificate transferred and a new certificate for 30 shares was issued in the name of the "Michigan Trust Company."

On August 11, 1931, an order was entered in the probate court allowing the final account of the Michigan Trust Company, executor of the estate of Gertrude I. Crossman, deceased, and assigning the residue of her estate, including the 30 shares of Security National Bank stock, to Earle L. Crossman as of October 12, 1930.

November 3, 1930, Earle L. Crossman died, leaving a will by which he appointed the Michigan Trust Company executor. Letters testamentary were issued, and as executor it received the residue of the Gertrude I. Crossman estate valued at $174,468 including the 30 shares of Security National Bank stock.

September 15, 1931, the Security National Bank and the American National Bank were consolidated with the Home State Bank for Savings under the name of American Home Security Bank.

The Michigan Trust Company delivered to the above bank the 30 shares of stock hereinbefore mentioned and under the terms of the consolidation a certificate for 51 shares of the capital stock of the American Home Security Bank with a par value of $510 was issued to the Michigan Trust Company as executor of the Earle L. Crossman estate. This stock certificate was later exchanged for 51 shares of stock issued in the name of the Michigan Trust Company, trustee under the will of Earle L. Crossman, deceased. This transfer was made January 9,

1932, and was the last entry as to these shares on the stockholders' ledger of said bank.

The final account of the Michigan Trust Company as executor of the estate of Earle L. Crossman, deceased, was filed September 2, 1932, and contained the following statement:

"The American National Bank, Home State Bank for Savings, and Security National Bank have consolidated under the name of American Home Security Bank. In exchange for 30 shares of the Security National Bank stock there has been received Certificate No. 1282 for 51 shares, par value $510, American Home Security Bank, issued to 'The Michigan Trust Company, Trustee under Will of Earle L. Crossman Estate.' Rate of exchange 1.7 shares of new stock for each share of Security stock."

October 4, 1932, the final account of the trust company as executor of the estate of Earle L. Crossman, deceased, was allowed. The order allowing the final account also confirmed the appointment of the trust company as trustee under the will of Earle L. Crossman, deceased, and assigned the residue of the estate. The trust company accepted the trust on October 10, 1932; and filed its inventory March 28, 1933, which included the 51 shares of American Home Security Bank stock at an appraised value of $855. The State banking commissioner levied an assessment on these shares of stock effective November 15, 1933.

On February 16, 1934, the trust company filed its first account as trustee and this account included as an asset of the trust estate the 51 shares of stock at an inventory value of $855. This account was allowed by the probate court of Kent county on March 20, 1934. The above stock was carried as an asset of the trust estate until December 20, 1934, when the trustee's second annual account was filed.

In that account, the stock was charged off as of no value and did not appear in subsequent accounts or inventories, although the trustee retained the stock certificate.

After the trust company received notice of the assessment on the 51 shares of stock, it distributed all of the trust estate to the beneficiaries under the will of Earle L. Crossman, deceased, and each defendant as a beneficiary received a. larger amount from the trust estate than the amount of the assessment. The trial court denied plaintiff any relief and held that there was no proof that Gertrude I. Crossman was the owner of the stock at the time of her decease and that there was no liability against her estate for the stock assessment; that there was no liability against the Earle L. Crossman estate for such assessment; that the trust company did no affirmative act which would incur liability upon its part; and that the heirs had done no act assuming the liability of a stockholder.

Plaintiff appeals and contends that upon levy of the assessment by the State banking commissioner the trust assets in the hands of the trust company as trustee under the will of Earle L. Crossman, deceased, became liable for its payment; that such liability follows the assets into the hands of the beneficiaries after such assets were distributed without payment of the assessment; that by distributing the trust assets after notice of the assessment, the trustee became individually liable; and that plaintiff is not barred by laches or estoppel from maintaining the present suit.

The history of the 30 shares of Security National Bank stock is that certificate No. 411 was issued in the name of Louise Marquardt or Frank C. Marquardt (husband and wife jointly) under date of March 24, 1930, indorsed in blank July 31, 1930, and

delivered to Gertrude I. Crossman prior to her death October 12, 1930.

In defendants' answer to plaintiff's bill of complaint we find the following:

"Said certificate was indorsed in blank and, according to the information and belief of the defendants, delivered to Gertrude Crossman prior to her death October 12, 1930."

Moreover, Mr. Lillie, vice-president of the Michigan Trust Company, testified as follows:

"The Marquardts had by assignment on the back of the certificate turned that stock over to Gertrude Crossman."

The certificate was inventoried as an asset of the Gertrude I. Crossman estate and on December 2, 1930, her executor had a new certificate issued in its name. In the final account of the executor of the Gertrude I. Crossman estate the stock was listed and assigned to the Earle L. Crossman estate. In the Gertrude I. Crossman estate we find that no question was raised as to the ownership of the stock. It was treated and considered as a part of the assets of the Gertrude I. Crossman estate.

In *Heap* v. *Heap,* 258 Mich. 250, 259, we said:

"The orders of probate court are judgments, *res judicata* of the matters involved, and cannot be attacked collaterally. *Chapin* v. *Chapin,* 229 Mich. 515. The allowance of an account is an adjudication of each item of it. *Hall* v. *Grovier,* 25 Mich. 428. The probate court determined, as it had to do to render the judgments, that the administrators had paid all debts, allowances, and residue reported by them. The finding of the payment of claims and residue is binding on the interested parties and is not open to question in a collateral proceeding. *Clark* v. *Fredenburg,* 43 Mich. 263. Except on ap-

peal, no other court may inquire into the sufficiency of the testimony to determine whether it sustains the findings and orders nor, indeed, whether they were supported by any evidence. *Morford* v. *Dieffenbacker,* 54 Mich. 593; *Egan* v. *Grece,* 79 Mich. 629; *Holden* v. *Lathrop,* 65 Mich. 652. The orders, therefore, were judgments that the receipts were valid. The only procedure by which a court of equity may inquire into the account is on bill to set aside the orders for fraud.''

See, also, *Roberts* v. *Michigan Trust Co.,* 273 Mich. 91; *McMann* v. *General Accident Assurance Corp.,* 276 Mich. 108.

In our opinion the facts show conclusively that Gertrude I. Crossman was the owner of the 30 shares of stock. The proceedings in the probate court are *res judicata* on the matter of ownership and cannot be collaterally attacked in this case; moreover, such a method of transfer from the Marquardts to Gertrude I. Crossman is valid.

''Possession of stock certificates indorsed in blank is *prima facie* evidence of ownership in the possessor, and the burden of producing evidence on the question of ownership rests upon the person disputing such ownership.'' *Hogg* v. *Eckhardt,* 343 Ill. 246, 253 (175 N. E. 382).

See, also, Cook's Principles of Corporation Law, p. 222.

It is next contended that Earle L. Crossman never became the owner of the stock during his lifetime and that the stock never left the estate of Gertrude I. Crossman.

In *Re Reidy's Estate,* 164 Mich. 167, 170, we said:

''The general rule is that title to personal property of a decedent, testate or intestate, vests in the personal representative until administration is completed and the estate is fully settled and distributed,

or until he chooses or is forced to part with it earlier."

In *Powell* v. *Pennock,* 181 Mich. 588, 592, we said:

"The equitable title to the personal property after his (testator's) death was at all times in the heirs, who owned it, subject to the rights of creditors and the expenses of administration."

When the legal estate vests in the legatees it relates back to the death of the testator.

"Upon acceptance of the trust there vests in the administrators or executors, as of the date of the death, title to all personal property belonging to the estate; it is taken, not for themselves, but in the right of others for the proper administration of the estate and for distribution of the residue. The decree of distribution confers no new right; it merely identifies the property remaining, evidences right of possession in the heirs or legatees and requires the administrators or executors to deliver it to them. The legal title so given relates back to the date of the death." *Brewster* v. *Gage,* 280 U. S. 327, 334 (50 Sup. Ct. 115).

It follows from the above authorities that upon the death of Gertrude I. Crossman the equitable title to the residue of her estate passed immediately to Earle L. Crossman and when the legal title passed to the estate of Earle L. Crossman, that title related back to the date of Gertrude I. Crossman's death. Following the death of Earle L. Crossman, the Michigan Trust Company as executor of Earle L. Crossman's estate accepted the residuary bequest and made it a part of the Earle L. Crossman estate for purposes of administration. The heirs and distributees having acquiesced in the actions of the executor of the estate and the orders of the probate court may not now question the authority of the executor to

accept the bank stock and make it a part of the assets of the estate. In *Lawrence* v. *DeBoer,* 273 Mich. 172, and *Schutz* v. *Read,* 284 Mich. 548, the right of distributees to accept beneficial properties and reject bank stock subject to assessment was denied.

In our opinion the Michigan Trust Company as executor of Earle L. Crossman's will had authority to exchange the Security National Bank stock for stock in the American Home Security Bank.

"It is well settled in this State that, on the decease of an intestate, the title (legal title) to his personal effects remains in abeyance until the appointment of an administrator, and then vests in him, in trust, in his official capacity, as of the time of the intestate's death, and he is entitled to the possession of such assets, and to manage the property for the purposes of his trust." *Parks* v. *Norris,* 101 Mich. 71.

See, also, *Brobst* v. *Brobst,* 190 Mich. 63.

With specific relation to acts of administrators such as the exchange of securities it is said in 11 R. C. L. p. 144, § 151, as follows:

"The duties of an executor or administrator in changing investments resemble in many ways his duties in collecting assets, since the changing of an asset to a new form may at the same time be a step in its collection and an alteration of investments of the estate. The principle which is elsewhere considered, that an executor or administrator will be held to a greater degree of accountability in reference to moneys actually in his hands than to securities and assets which come into his hands for collection, applies with full force to the changing of securities by such personal representatives. And it should be remembered in this connection that executors and administrators are usually held liable only for what they actually receive except in cases of marked negligence. Accordingly, an administrator was held not liable for the loss resulting from his

keeping back [bank?] stock, when he acted in good faith, under the advice of counsel, and with a sincere desire properly to discharge the duties of his office.''

Moreover, paragraph 8 of the will provides:

''It shall be the duty of the trustee to keep the trust estate invested in good, safe, income-producing securities or property having regard to the safety of the investment and the preservation of the principal of the trust estate. The trustee may, however, in its discretion continue to hold in trust securities or property held by me at my death, or may dispose of the same in its discretion.

''The trustee shall have full power to sell, lease, or otherwise dispose of property, real or personal, in its discretion and without license from the probate or any other court, and for such price and on such terms as it shall deem advisable; also to receive and collect rentals, make repairs and improvements, pay taxes and assessments, and otherwise exercise such rights and powers with respect to the trust property or estate as though the trustee was the absolute owner thereof.''

Nor do we think that plaintiff is barred by laches or estoppel. The assessment on the American Home Security Bank stock was levied November 15, 1933. Defendants admit in their answer to the bill of complaint that a demand was made upon them to pay the assessment. The present suit was instituted December 8, 1937. The record does not show that any of the defendants was prejudiced by the delay in the bringing of the present suit.

In *Quinn* v. *Tully,* 174 Mich. 30, 41, we said:

''There has been in this case no change of position on the part of defendant Tully, nor does it appear that he relied upon the silence or conduct of complainant and thereby changed his position to his disadvantage, by reason of which it would be inequitable that the complainant should now assert his

rights. Mere lapse of time, without such change, cannot in itself constitute laches.''

It is also urged by defendant Michigan Trust Company that the bill of complaint does not state a cause of action against the trustee individually. The trust company had notice of the assessment. In such instances its duty is well defined. In *Lawrence* v. *DeBoer, supra,* 179, we said:

''When he (the executor) had notice of the assessment, as it clearly appears that he had, it was his duty to satisfy himself that it was a legal charge against the estate and, if he determined that it was, then to make payment of it and list it among the disbursements made by him.''

In the case of *Luce* v. *Thompson,* (C. C. A.) 36 Fed. (2d) 183, an executrix distributed a decedent's estate after the bank in which the decedent owned stock had closed its doors and at a time when an assessment was threatened. The distributees were held liable to the extent of the distribution received and the executrix was also held liable for failing to pay the assessment. The court quoted from *Miller* v. *Hamner* (C. C. A.), 269 Fed. 891, as follows:

'' 'There can be little doubt that an executor who settles an estate without making provisions for or disposing of a liability imposed by statute may, in a proper action seasonably brought, be held personally liable for devastavit.' ''

The purpose of the statutes in relation to stock assessment liability is well stated in *Fors* v. *Farrell,* 271 Mich. 358, 370, where we said:

''But statutory double liability has been deemed essential to the stability of banking institutions and requisite for the protection of depositors and other creditors of such corporations. Public policy has

been and is deeply concerned in this phase of the law.''

In the present action the record shows that the trust company ignored the notice of assessment and disposed of trust assets subject to the assessment. Such action was done at its peril. It is personally liable for the assessment. The record also shows that each beneficiary received assets exceeding the value of the assessment.

The decree of the trial court is reversed and a decree will be ordered entered herein holding defendants jointly and severally liable for the amount of the assessment. Plaintiff may recover costs.

BUTZEL, C. J., and WIEST, BUSHNELL, POTTER, CHANDLER, NORTH, and MCALLISTER, JJ., concurred.