*In re* FORFEITURE OF UNITED STATES CURRENCY

Docket No. 86891. Submitted March 4, 1987, at Detroit. Decided November 2, 1987. Leave to appeal applied for.

The Wayne County Prosecuting Attorney petitioned in the Wayne Circuit Court seeking an order for the forfeiture of $22,237.60 in United States currency and one 1980 Mercedes-Benz automobile. It was alleged that the currency was obtained through illegal drug sales activity and that the automobile was used in connection with such drug sales. The trial court, Richard D. Dunn, J., issued an order for the forfeiture of the currency but denied forfeiture of the automobile. Muriel Parker appealed from the forfeiture order and the prosecutor cross-appealed from the denial of the order of forfeiture regarding the automobile.

The Court of Appeals *held:*

1. The trial court did not err in admitting the evidence obtained from Muriel Parker at the time of her arrest without a warrant. The police officer's check of Parker's purse to ascertain her identity so that a standard check for outstanding warrants could be made was a standard operating procedure falling within the exception to the warrant requirement allowing a search of an arrestee's clothing or containers or articles in his possession at the time of his arrest without a warrant, if it is part of an established inventory procedure.

2. There was sufficient evidence to establish probable cause to believe that the money's source was Randall Upshaw's illegal

REFERENCES

Am Jur 2d, Appeal and Error §§ 515 *et seq.*

Am Jur 2d, Forfeitures and Penalties §§ 25, 28 *et seq.*

Am Jur 2d, Searches and Seizures §§ 37 *et seq.*; 40-43, 100-102, 92 *et seq.*

Am Jur 2d, Trial §§ 1250 *et seq.*

Lawfulness of warrantless search of purse or wallet of person arrested or suspected of crime. 29 ALR4th 771.

Relief to owner of motor vehicle subject to state forfeiture for use in violation of narcotics laws. 50 ALR3d 172.

Lawfulness of nonconsensual search and seizure without warrant, prior to arrest. 89 ALR2d 715.

drug business and that the automobile was used in such business.

3. The evidence was clearly sufficient to support an order of forfeiture of the currency and the automobile.

Affirmed in part and reversed in part.

1. FORFEITURES AND PENALTIES — EVIDENCE — CONSTITUTIONAL LAW.
Forfeiture proceedings are quasi-criminal in character and evidence derived from a search in violation of the Fourth Amendment is inadmissible at such proceedings (US Const, Am IV).

2. APPEAL — EVIDENCE — SUPPRESSION OF EVIDENCE.
The Court of Appeals will not reverse a denial or grant of a motion to suppress evidence unless the trial judge's decision is clearly erroneous; a finding will be determined to be clearly erroneous where, although there is evidence to support it, the Court of Appeals is firmly convinced that a mistake has been made.

3. SEARCHES AND SEIZURES — WARRANTS — EXCEPTION TO WARRANT REQUIREMENT.
A contemporaneous search and seizure made incident to a valid arrest is an exception to the warrant requirement and is not in violation of the Fourth Amendment; a search of an arrestee's clothing or containers or articles in her possession at the time of her arrest is proper without a warrant, if it is part of an established inventory procedure; a search of an arrestee's purse as a standard operating procedure to ascertain her identity so that a standard check for outstanding warrants can be conducted falls within the exception to the warrant requirement (US Const, Am IV).

4. CONTROLLED SUBSTANCES — FORFEITURES AND PENALTIES — SEARCH WARRANTS.
Anything of value which can be traced to an exchange for a controlled substance is subject to forfeiture; such property may be seized without process where there is probable cause to believe that the property is being used or intended to be used in an exchange for a controlled substance; a probable cause finding requires only facts which would induce a fair-minded person of average intelligence and judgment to believe that the statute regarding such forfeiture was violated (MCL 333.7521[1][f], 333.7522[d]; MSA 14.15[7521][1][f], 14.15[7522][d]).

5. APPEAL — BENCH TRIAL — FINDINGS OF FACT.
Findings of fact in a bench trial will not be disturbed unless they are clearly erroneous (MCR 2.613[C]).

6. Appeal — Criminal Law — Bench Trials — Sufficiency of
     Evidence.
  The standard for sufficiency of the evidence in a criminal bench
    trial is that, when viewed in the light most favorable to the pro-
    secutor, a rational trier of fact could have found that the essen-
    tial elements of the crime were proven beyond a reasonable doubt.

*John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Chief, Civil and Special Litigation, and *A. George Best, II,* Assistant Prosecuting Attorney, for petitioner.

*Cornelius Pitts,* for Muriel Parker.

Before: M. J. Kelly, P.J., and J. B. Sullivan and P. R. Joslyn,* JJ.

P. R. Joslyn, J. This appeal is from an order for the forfeiture of certain currency in favor of the prosecutor pursuant to MCL 333.7521 *et seq.*; MSA 14.15(7521) *et seq.* The order resulted from a bench trial conducted by Wayne Circuit Judge Richard D. Dunn. Parties in interest include Randall Upshaw, who the prosecutor claims earned the money through illegal drug transactions, his mother, Muriel Parker, in whose purse the money was found, and Vivian Turner, Upshaw's live-in girl friend, who Parker initially claimed gave her the money. The prosecutor cross-appeals from the denial of an order of forfeiture regarding a 1980 Mercedes-Benz.

The case arises out of the murder of Raymond "Bam Bam" Repress on November 13, 1984. Sergeant Lloyd Clemons of the Detroit Police Department, Homicide Unit, testified that suspicion centered on Upshaw, and his residence in Detroit was watched.

On the afternoon of November 14, 1984, Sergeant Clemons observed Parker entering a car parked in the driveway of Upshaw's residence.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Clemons and two other officers pulled their unmarked police car behind the car, blocking Parker's exit. Parker initially identified herself as a "friend" of the resident, and she denied having any identification in her possession. Clemons asked her if they could discuss the homicide investigation. While sitting in the police car discussing the homicide, Parker repeatedly looked in the direction of the parked car. The officer then asked her if there was something in her car. Parker said no and the officer exited from the police car and walked toward the parked car. Upon looking in the car, Clemons observed two pieces of luggage and a men's suit hanger case. Suspecting that Parker knew where Upshaw was hiding and suspecting that she was acting in aid of Upshaw, the officers placed Parker under arrest.

While in custody, Parker gave a statement indicating that she was directed by Vivian Turner to go to Upshaw's residence, pick up some things, return home and await another call. After interviewing Parker and determining that she would not give any further information and therefore would be released, Clemons searched her purse seeking positive identification. Inside her purse Clemons observed large quantities of United States currency wrapped in several different bags. An evidence technician was called and the purse and its contents were photographed and these photographs were introduced at trial. Parker stated that the money belonged to Turner.

The forfeiture hearing was devoted primarily to Upshaw's drug sales activity during September and October of 1984. Three witnesses testified that they had worked for Upshaw either selling cocaine or preparing cocaine for sale. Each testified that they saw Upshaw collect the money from cocaine

sales and distribute cocaine while driving the Mercedes Benz.

Parker was called by the prosecutor as an adverse witness. She offered contradictory testimony as to how she came to have over $20,000 in her purse. Parker testified that either Randall called and indicated that he was in trouble, or her ex-husband, J. C. Upshaw, called to indicate that she should gather as much money as possible so that they could hire an attorney and put up bond because Randall was in trouble. Parker also testified that the money belonged to Vivian Turner. Finally, Parker testified that she received $10,000 from her ex-husband in September, 1984, $5,000 from winning an illegal street lottery and $5,000 from her mother.

In addition to the testimony, there was also significant documentary evidence relative to the automobile. The application for title was in Vivian Turner's name, although Randall Upshaw signed the application and his father's address was given as Turner's address. There was also a transfer of title to West Detroit Medical Clinic, whose sole incorporator and president was Randall Upshaw, on May 19, 1985, three days after the beginning of hearings in the instant case.

The trial court ruled that the owner of the money was Randall Upshaw and that the money was gained though the unlawful enterprise of selling cocaine and granted the prosecutor's forfeiture petition. The trial court also ruled that Vivian Turner was the owner of the Mercedes Benz and, although the vehicle was shown to have been used in the trafficking of narcotics, there was an absence of proof as to her knowledge of these activities. The court concluded that the vehicle should be returned to her. From these rulings

respondent brings three claims of error and the prosecutor claims one error.

Parker first claims that the trial court erred in admitting evidence obtained from her when she was arrested without a warrant. Forfeiture proceedings are quasi-criminal in character and evidence derived from a search in violation of the Fourth Amendment is inadmissible. *One 1958 Plymouth Sedan v Pennsylvania,* 380 US 693; 85 S Ct 1246; 14 L Ed 2d 170 (1965).

Parker properly notes that the issue of the legality of her arrest and the subsequent admission of relevant evidence was raised several times below. Inexplicably, the trial judge never ruled on the suppression motion, although the forfeiture hearing went forward and photographs of the currency and Parker's testimony were introduced. The trial judge relied, in part, on the photographs in his ruling and used Parker's testimony in his evaluation of the credibility. Therefore, this Court will treat the trial judge's implicit acceptance of the evidence as a denial of the suppression motion.

This Court will not reverse a denial or grant of a motion to suppress unless the trial judge's decision is clearly erroneous. *People v Burrell,* 417 Mich 439, 448; 339 NW2d 403 (1983); *People v United States Currency,* 148 Mich App 326, 329; 383 NW2d 633 (1986). A finding is clearly erroneous where, although there is evidence to support it, the reviewing court is firmly convinced that a mistake has been made. *People v Goss,* 89 Mich App 598; 280 NW2d 608 (1979).

The Fourth Amendment to the United States Constitution protects against an unreasonable search and seizure. It is, however, well settled that a contemporaneous search and seizure made incident to a valid arrest is an exception to the warrant requirement and is not in violation of the

Fourth Amendment. *Weeks v United States,* 232 US 383; 34 S Ct 341; 58 L Ed 652 (1914); *People v Cumbus,* 143 Mich App 115; 371 NW2d 493 (1985).

A search of an arrestee's clothing or containers or articles in his possession at the time of his arrest is proper without a warrant, if it is part of an established inventory procedure. *Illinois v Lafayette,* 462 US 640; 103 S Ct 2605; 77 L Ed 2d 65 (1983); *People v Cicotte,* 133 Mich App 630, 633-634; 349 NW2d 167 (1984). Herein, Sergeant Clemons' testimony was that he searched Parker's purse to ascertain her identity so that he could run a standard check for outstanding warrants. While this may not have been an inventory search, the purse check was a standard operating procedure which falls within the *Lafayette* exception.

Such a procedure was valid because of the legality of the arrest. The testimony presented at trial justified Parker's arrest as an accessory after the fact. *People v Lucas,* 402 Mich 302; 262 NW2d 662 (1978). Police observed Parker entering a car parked in the driveway of Upshaw's residence. Parker refused to identify herself when approached by police. Parker denied there was any property in the car and attempted to block the officer from looking into the vehicle. However, the officer observed a hanging bag containing men's clothing through the window of the car. It is reasonable to infer that Parker had just emerged from Randall Upshaw's residence carrying luggage which belonged to the murder suspect. Based upon the evidence presented, the trial judge did not err in admitting the evidence obtained from Ms. Parker at the time of her arrest.

Parker next argues that the currency should have been suppressed by the trial judge because it was discovered through an improper search. As

has already been stated, the trial judge properly ruled that the evidence was admissible.

Michigan law provides that anything of value which can be traced to an exchange for a controlled substance is subject to forfeiture. MCL 333.7521(1)(f); MSA 14.15(7521)(1)(f). Michigan law also provides that such property may be seized without process where there is probable cause to believe that the property is being used or intended to be used in an exchange for a controlled substance. MCL 333.7522(d); MSA 14.15(7522)(d). This rule that property may be seized if probable cause can be supported by untainted evidence that the money or property involved was linked to illegal activity has been applied by the federal courts and one other state court. See *United States v U S Currency $31,828,* 760 F2d 228 (CA 8, 1985); *United States v Monkey,* 725 F2d 1007 (CA 5, 1984); *United States v Eighty-Eight Thousand, Five Hundred Dollars,* 671 F2d 293 (CA 8, 1982); *Lowrey v Nelson,* 43 Wash App 747; 719 P2d 594 (1986).

The statute clearly provides that the property is subject to forfeiture if traceable to an exchange for controlled substances. Thus, the trial judge need only find that there was probable cause to believe that the money was traceable to drug exchanges. A probable cause finding requires only facts which would induce a fair-minded person of average intelligence and judgment to believe that the statute was violated. *People v Oliver,* 417 Mich 366, 374; 338 NW2d 167 (1983).

In the instant case there was sufficient evidence to establish probable cause to believe that the money's source was Upshaw's illegal drug business. The testimony of witnesses was clear that Upshaw was in charge of the business of selling cocaine. Testimony also indicated that Parker was

discovered with over $22,000 after emerging from Upshaw's residence. Finally, testimony showed that Upshaw made daily collections from his "employees" which totaled several thousand dollars a day. Such overwhelming evidence was enough to support a finding of probable cause that the money was linked to the illegal sale of drugs.

Parker also claims that there was insufficient evidence produced by the prosecutor linking the money to drug sales. Findings of fact in a bench trial will not be disturbed unless clearly erroneous. *People v United States Currency, supra,* 148 Mich App 332; see also MCR 2.613(C). In criminal bench trials, the standard for sufficiency of the evidence is that, when viewed in the light most favorable to the prosecutor, a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Petrella,* 424 Mich 221, 268-269; 380 NW2d 11 (1985).

This Court cannot state that the trial judge's findings of fact were clearly erroneous. The evidence, when viewed in a light most favorable to the prosecutor, clearly indicates that Upshaw was involved in or oversaw the mixing, cooking, packaging, delivering and selling of cocaine. There was also testimony that Upshaw bound the money from drug sales in the same way as the money that was found in Parker's purse. The evidence was clearly sufficient to support an order of forfeiture.

Lastly, the prosecutor claims that the trial court erred in refusing to order forfeiture of the Mercedes-Benz automobile. We agree.

As has been noted, there was a significant amount of evidence indicating that Upshaw used the automobile in the delivery of cocaine and recovery of cocaine sales money. There was also

significant documentary evidence that the placing of the title in Turner's name was a mere subterfuge. According to J. C. Upshaw, Turner never lived at his address. Yet, Randall Upshaw registered the automobile to his father's address. There was also testimony that Randall Upshaw and Vivian Turner lived together and purchased the vehicle together. The mere placing of the automobile in Ms. Turner's name cannot prevent forfeiture. This vehicle was used to convey and sell controlled substances and thus is subject to forfeiture pursuant to MCL 333.7521(1)(d); MSA 14.15(7521)(1)(d). The evidence presented cannot support the conclusion that Ms. Turner had no knowledge of Upshaw's activities.

The trial judge's decision granting the prosecutor's forfeiture petition regarding the currency is affirmed; however, the trial judge's decision returning the 1980 Mercedes-Benz to Vivian Turner is reversed.

Affirmed in part and reversed in part.