In re FORFEITURE OF $19,250

Docket No. 145591. Submitted October 20, 1994, at Detroit. Decided February 21, 1995, at 10:05 A.M.

The Wayne County Prosecutor initiated proceedings in the Wayne Circuit Court for the forfeiture pursuant to the controlled substances act of $19,250 seized from Derrick Smith and Patricia R. Daniels following their arrest for suspected narcotics trafficking. When arrested, Smith and Daniels had used aliases in identifying themselves. Notices of seizure and intended forfeiture were sent to Smith under his true name and to Daniels under the false name she had given. Smith and Daniels contested the forfeiture, but the court, Michael J. Talbot, J., granted summary disposition for the prosecutor. Daniels moved to set aside the order of summary disposition and Olena Smith, Derrick Smith's mother, moved to intervene, claiming that the money belonged to her. The court denied both motions. The Court of Appeals, DANHOF, C.J., and BEASLEY and MacKENZIE, JJ., in an unpublished opinion per curiam, decided April 27, 1989 (Docket Nos. 103994, 106059), reversed the grant of summary disposition against Daniels, reversed the denial of Olena Smith's motion to intervene, and remanded for further proceedings. The trial court again ordered the forfeiture of the money. Olena Smith appealed.

The Court of Appeals *held:*

1. A notice of seizure and intended forfeiture, as required by MCL 333.7523(1)(a); MSA 14.15(7523)(1)(a), did not have to be sent to Olena Smith because the Wayne County Sheriff's Department, whose deputies had seized the money, properly could presume that Derrick Smith or Daniels owned the money on the basis of their possession of the money and that it was they

REFERENCES

Am Jur 2d, Drugs, Narcotics, and Poisons §§ 27.25-27.28.

Validity and construction of provisions of Uniform Controlled Substances Act providing for forfeiture hearing before law enforcement officer. 84 ALR4th 637.

Supreme Court's views as to due process requirements of forfeitures. 76 L Ed 2d 852.

who had to receive the statutory notices in the absence of any indication that Olena Smith was the owner.

2. The trial court did not err in allowing the prosecutor to impeach the credibility of Derrick Smith, whom the prosecutor had called as a witness and did not identify as an adverse witness. Derrick Smith could not have been an adverse witness because he was not the opposing party or an employee or agent of the opposing party. Additionally, MRE 607 permits the impeachment of a witness even by the party who called the witness.

3. The trial court did not clearly err in finding incredible the claim that Olena Smith was the owner of the seized money.

4. The trial court is not precluded by the law of the case doctrine from redetermining whether Daniels owned the money. In reversing the grant of summary disposition against Daniels, the Court of Appeals did not restrict the trial court's discretion to determine the ownership of the money.

5. By not raising an objection in the trial court, Olena Smith has waived appellate review of the claim that the prosecutor improperly impeached her and Derrick Smith with evidence of their prior arrests or convictions. Had the issue been preserved, the Court of Appeals would find any error to have been harmless.

6. By first raising it on appeal, Olena Smith has waived appellate review of the claim that the Wayne County Sheriff's Department lacked authority to seize the money. Had the issue been preserved, the Court of Appeals would determine that the sheriff's department is among the local units of government that may seize and forfeit property pursuant to the controlled substances act.

Affirmed.

FORFEITURES AND PENALTIES — CONTROLLED SUBSTANCES ACT — NO-
    TICES OF SEIZURE AND FORFEITURE — CASH.

   Possession of cash is prima facie evidence of ownership of the
       cash for purposes of the forfeiture provisions of the controlled
       substances act that requires that notice of seizure and intended
       forfeiture of property be given to its owner; in the absence of
       any contrary indication, the person from whom the cash is
       seized is the one to whom notice must be given (MCL
       333.7523[1][a]; MSA 14.15[7523][1][a]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecut-

ing Attorney, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the plaintiff.

*James D. O'Connell,* for Olena Smith.

Before: CAVANAGH, P.J., and T. G. KAVANAGH* and L. V. BUCCI,** JJ.

L. V. BUCCI, J. Olena Smith (hereafter claimant) appeals as of right from an order forfeiting $19,-250. We affirm.

The forfeited money was seized from Derrick Smith and Patricia Rose Daniels at Detroit Metropolitan Airport on April 2, 1987. Derrick Smith is the son of claimant. Patricia Rose Daniels was Derrick Smith's girl friend.

When Derrick Smith and Daniels arrived at the airport, they checked their bags in for their flight but were told that their bags might not make the flight because the bags were unusually heavy. They left the bags with the airline and then purchased tickets with cash for another flight to Los Angeles. When purchasing the tickets, Daniels showed identification that indicated her name was Joni Smith Talbert. Derrick Smith's sister's name is Joni Talbert. Smith's ticket was purchased in the name of Anthony Fleming.

The Wayne County Sheriff's Department was notified of Smith and Daniels' activities at the airport and officers observed that Daniels went into the restroom. When she came out, an officer saw her place something into Smith's right hand. Sheriff's deputies approached the pair. Smith identified himself as Dwayne Richards and Daniels identified herself as Joni Talbert. Smith and Dan-

---

* Former Supreme Court justice, sitting on the Court of Appeals by assignment pursuant to Administrative Order No. 1994-7.

** Circuit judge, sitting on the Court of Appeals by assignment.

iels consented to be searched and the officers found a white container labeled "quinine" and a mortar and pestle in Smith's right jacket pocket. The officers testified at trial that quinine is a known mixer for heroin and that a mortar and pestle can be used to mix heroin and quinine together. The officers also found $19,250 in cash. Most of the cash was wrapped in a plastic bag in Daniels' purse. The police also found drugs that were in containers that did not have valid prescriptions.

Smith and Daniels were told they were free to leave but the cash was retained. Later, the deputies tested the cash with a police dog trained to detect the scent of drugs. The dog reacted positively to the cash, indicating that it had been close to or had touched narcotics.

Derrick Smith and Daniels subsequently were observed at the airport by deputies on two separate occasions. On one of these occasions, the deputies seized 816 pills containing Dilaudid, a synthetic form of heroin. Testimony was presented that the street value of the Dilaudid was over $30,000.

In early July 1987, the Wayne County Prosecutor's Office filed a complaint for an order of forfeiture of the currency. The complaint named Derrick Smith and Joni Smith Talbert. Daniels filed an answer under the name of Joni Smith Talbert. In the answer she claimed that Derrick Smith was her brother. Daniels claimed the money came from the estate of Callener McKinney, allegedly her grandmother. When the answer was filed, Daniels was represented by James D. O'Connell, the attorney currently representing claimant.

At a pretrial conference held on September 11, 1987, Daniels testified that her name was Joni Talbert. The prosecutor indicated Daniels was represented by O'Connell and that he had supplied

O'Connell with a set of interrogatories on July 7, 1987, but had not received a reply. Daniels testified that she had never been contacted by Mr. O'Connell. Derrick Smith was present and indicated that he was Talbert's brother. Daniels told the court that the money seized by the sheriff's deputies on April 2, 1987, was their mother's. Because Daniels admitted that she did not have an interest in the money, the lower court granted summary judgment, finding that she was not a proper claimant.

Approximately ten days later, O'Connell filed a motion to set aside summary disposition along with an application to intervene on behalf of claimant, which were both denied. In the application to intervene, claimant contended that she had legitimately obtained the money and had entrusted it to her daughter, Joni Smith Talbert, on or about April 2, 1987, for making repairs to a house in California. Claimant further asserted that she learned during the week of September 14, 1987, that the money she had entrusted to her daughter, Joni Smith Talbert, had been seized and was subject to forfeiture.

In an opinion dated April 27, 1989, this Court, acting under the impression that Daniels was the daughter of claimant, reversed the trial court's order granting summary disposition against Daniels and the order denying claimant's motion to intervene.

Following remand, the lower court conducted a bench trial. The prosecution presented the testimony of Derrick Smith, who admitted that he used many aliases. He also admitted that the pills and the mortar and pestle that were seized at the airport were his. However, Smith claimed that he had a prescription for the pills and used the mortar and pestle to crush his medicine because

he had trouble swallowing pills. Smith admitted that the pills were not in containers with valid prescriptions but claimed that Daniels must have put the pills in another container. Daniels was not present at the trial and Smith did not know her whereabouts.

Smith claimed that his mother had approximately $20,000 in life savings in a small unlocked metal box in her house. Smith testified that he took the money without his mother's consent to fix a house in Los Angeles his mother had inherited.

Police officers then testified regarding the seizure of the money and their contacts with Smith and Daniels at the airport. Officers testified that Los Angeles was a "drug source" city and Detroit was a "demand" city. They further testified that Smith and Daniels appeared to be acting as drug couriers.

Claimant testified that she had retired from Chrysler Corporation and that the cash seized at the airport was her life savings. She claimed that although she had a bank account, she kept the cash in a small unlocked metal box in her house. She further claimed that she noticed that the cash was missing shortly after her son, Derrick Smith, visited her in April 1987. She asked a few family members about the money and came to the conclusion that Derrick had taken it. She claimed that she first talked about this matter with Derrick while the forfeiture proceedings were pending. She claimed that she had discussed fixing the house in Los Angeles with Derrick and said that she would have given him the money to do so.

At the conclusion of the trial, the lower court concluded that the cash was subject to forfeiture. The lower court correctly noted the primary issue in this case was credibility. In its findings of fact, the trial court concluded that the testimony pre-

sented by the claimant was not truthful. The lower court believed that the cash was used for drug trafficking and that the original claimant, Daniels, was the party to whom the money actually belonged. The lower court felt there was an effort to try to put a person with some modicum of legitimacy by way of employment before the court to establish a third-party claim.

On appeal, claimant first argues that the cash must be returned to her because the state failed to comply with the notice requirement set forth in the forfeiture statute. The forfeiture proceedings were conducted pursuant to the controlled substances act, MCL 333.7101 *et seq.*; MSA 14.15(7101) *et seq.* If property with a value that does not exceed $50,000 is seized pursuant to the act, the local unit of government that seized the property is required to give notice to the owner of the property:

> The local unit of government that seized the property, or, if the property was seized by the state, the state shall notify the owner of the property that the property has been seized, and that the local unit of government or, if applicable, the state intends to forfeit and dispose of the property by delivering a written notice to the owner of the property or by sending the notice to the owner by certified mail. If the name and address of the owner are not reasonably ascertainable, or delivery of the notice cannot be reasonably accomplished, the notice shall be published in a newspaper of general circulation in the county in which the property was seized, for 10 successive publishing days. MCL 333.7523(1)(a); MSA 14.15(7523) (1)(a).

The goal of statutory construction is to effectuate legislative intent. *In re Forfeiture of One 1987 Chevrolet Blazer,* 183 Mich App 182, 184; 454

NW2d 201 (1990). Although forfeitures generally are not favored in the law, the forfeiture provisions of the controlled substances act are embodied in the Public Health Code and, therefore, must be interpreted liberally in order to promote the health, safety, and welfare of Michigan's citizens. *Id.* However, the requirements of the forfeiture provisions may be construed strictly to ensure that the due process rights of claimants are protected. Const 1963, art 1, § 17; *In re Forfeiture of One 1983 Cadillac,* 176 Mich App 277, 280; 439 NW2d 346 (1989).

United States currency normally is considered to be a bearer instrument. See *Ramirez v Bureau of State Lottery,* 186 Mich App 275, 278-279; 463 NW2d 245 (1990). Possession of such property is prima facie evidence of ownership and the burden of producing evidence regarding ownership rests upon the person disputing such ownership. *Barnes v Detroit,* 379 Mich 169, 177; 150 NW2d 740 (1967); *Glass v Crossman,* 289 Mich 130, 138; 286 NW 184 (1939).

Although claimant fails to cite any case law regarding the adequacy of notice in forfeiture proceedings, federal courts have found that notice was defective when the government knew at the time the notice was sent that the notice was likely to be ineffective. See *Sarit v United States Drug Enforcement Administration,* 987 F2d 10, 15 (CA 1, 1993). Federal courts have implied a bad-faith standard to determine the adequacy of notice. In applying this standard, a court determines the notifying party's knowledge of the likely effectiveness of notice from the moment at which notice is sent. Courts are reluctant to extend a notifying party's duty beyond the initial notice absent exceptional circumstances. *Id.* at 14-15.

Smith and Daniels were in possession of the

currency. The deputies could properly rely on the presumption of ownership. The notice sent to Smith and Daniels complied with MCL 333.7523; MSA 14.15(7523). There were no exceptional circumstances that would have required the deputies to notify claimant. There is no credible evidence that Smith and Daniels properly identified claimant as the owner of the cash when it was seized. While they claimed they obtained the cash from their mother, they were using aliases. Claimant is not Daniels' mother. The prosecutor served interrogatories to Daniels requesting the identity of all claimants, but Daniels did not answer them. Considering these circumstances, the deputies did not have a duty to extend notice to claimant. Claimant received sufficient notice of this action and was given an adequate opportunity to claim that she owned the currency.

Claimant next argues that the prosecutor was improperly allowed to impeach its own witness, Derrick Smith, because it failed to call Mr. Smith as an adverse witness and therefore the prosecution is bound by Derrick Smith's testimony. Derrick Smith, however, was not an adverse witness because he was not the opposing party or an employee or agent of the opposing party. MCL 600.2161; MSA 27A.2161. Pursuant to MRE 607, the credibility of a witness may be attacked by any party, including the party calling the witness. Claimant's argument is without merit.

Claimant next argues that the lower court's decision must be reversed because it was based on facts that were not established by the evidence. Claimant argues that there was insufficient evidence to support the trial court's findings.

The trial court's duty to make specific factual findings is satisfied where it is manifest that the trial court was aware of factual issues and cor-

rectly applied the law. *People v Porter*, 169 Mich App 190, 194; 425 NW2d 514 (1988). Findings of fact by the trial court will not be set aside unless clearly erroneous. MCR 2.613(C); *In re Forfeiture of United States Currency*, 164 Mich App 171, 179; 416 NW2d 700 (1987). A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Contel Systems Corp v Gores*, 183 Mich App 706, 711; 455 NW2d 398 (1990). In applying the clearly erroneous standard, regard is given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it. MCR 2.613(C). In this case, the trial court found that claimant and Derrick Smith were not credible.

Claimant distorts the record in making this argument. The record amply supports the trial court's finding that the testimony of claimant and Smith was not credible. The record established that Smith and Daniels frequently traveled between Los Angeles, a drug source city, and Detroit, a demand city. While traveling, they used numerous aliases and carried large amounts of cash, large amounts of narcotics in containers that did not have prescriptions affixed to them, and paraphernalia used for preparing drugs for sale. The record supports the trial court's conclusion that Smith and Daniels tried to use claimant as a straw person because she had some modicum of legitimacy by way of employment, in an attempt to regain the money that had been seized.

Claimant also argues that the trial court was barred by the law of the case doctrine from finding that Daniels owned the currency. Claimant argues that because the trial court found Daniels was not the owner of the currency when it granted sum-

mary disposition at the pretrial conference, it could not later find, after its decision granting summary disposition was reversed by this Court and after a trial had been conducted, that Daniels was the owner of the currency.

The thrust of the law of the case doctrine is that an inferior court is bound by the rulings of a superior court and that decisions made during a prior appeal are not open to review in a subsequent appeal. *People v Wells,* 103 Mich App 455, 462; 303 NW2d 226 (1981). This doctrine exists primarily to maintain consistency and avoid reconsideration of matters previously decided in the course of a single continuous lawsuit. *Marysville v Pate, Hirn & Bogue, Inc,* 196 Mich App 32, 34; 492 NW2d 481 (1992). The law of the case doctrine merely reflects the general practice of courts to refuse to reopen what has been decided; it is not a limit on their power. *Id.*

The law of the case doctrine does not apply to the lower court's original ruling granting summary disposition against Smith and Daniels because the doctrine applies to rulings from appellate courts. This Court's prior ruling merely reversed the trial court's grant of summary disposition and required the lower court to allow claimant to intervene. This Court did not restrict the lower court's discretion to determine the ownership of the currency. We also do not believe that the law of the case doctrine should apply because the prior decision was based in part on fraudulent statements made by claimant and Daniels. The lower court was not precluded by the law of the case doctrine from determining that Daniels was the owner of the currency.

Claimant next argues that the prosecutor improperly impeached claimant and Derrick Smith with evidence of prior arrests and convictions.

Derrick Smith testified that during the five years he lived in Los Angeles he was involved in two drug cases and pleaded guilty to one charge of "internal" possession. After this information was elicited, claimant's counsel stated that he should interpose an objection and that the prosecutor was attempting to impeach its own witness and referred to *People v Allen,* 429 Mich 558; 420 NW2d 499 (1988).

Counsel's mere reference to *Allen* was insufficient to preserve this issue for appeal. The Court in *Allen* discussed the differing interpretations of the application of MRE 609(a) to the practice of impeaching criminal defendants with evidence of prior convictions. *Allen, supra* at 563. This is not a criminal case. It was incumbent on claimant's counsel to specify the nature of the objection. An issue is not properly preserved without a specific and clear objection for stated reasons that enables a trial judge to rule clearly and definitively on an assignment of error. *Wade v Bay City,* 57 Mich App 581, 588; 226 NW2d 569 (1975). While claimant's counsel referred to *Allen,* he failed to specify the grounds for his objection and therefore failed to preserve this issue for review.

However, if this issue were properly preserved we would find that admission of evidence of Smith's prior convictions was harmless error. This was a bench trial and the judge, sitting as fact-finder, is presumed to possess an understanding of the law that allows him to understand the difference between admissible and inadmissible evidence or statements of counsel. *People v Wofford,* 196 Mich App 275, 282; 492 NW2d 747 (1992). Any error in the admission of this testimony was also harmless because Smith's testimony was incredible. See *Allen, supra* at 612.

Claimant also contends that she was improperly

impeached with evidence regarding a prior arrest for larceny and possession of marijuana. Claimant's counsel failed to object to these questions at trial. Objections to the admission of evidence may not be raised for the first time on appeal absent manifest injustice. *People v Stimage,* 202 Mich App 28, 29; 507 NW2d 778 (1993). Even if this issue was properly preserved, any error would be harmless because there was ample other evidence to support the trial court's findings regarding credibility.

Claimant next argues that the Wayne County Sheriff's Department was not authorized under the controlled substances act to seize the currency. Claimant first raises this issue on appeal. This Court need not review issues that are initially raised on appeal. *Deal v Deal,* 197 Mich App 739, 741; 496 NW2d 403 (1993). Moreover, claimant fails to cite any authority to support her contention that the sheriff's department is not empowered to seize property under the controlled substances act. Claimant merely refers to several sections of the act and argues that these specific sections do not empower the sheriff to forfeit property.

The Wayne County Sheriff's Department clearly had the authority to seize the cash under the forfeiture provisions of the controlled substances act. Several of the forfeiture provisions refer to the "local unit of government that seized the property." MCL 333.7523; MSA 14.15(7523); MCL 333.7524; MSA 14.15(7524); MCL 333.7524a; MSA 14.15(7524a). The Wayne County Sheriff's Department is a local unit of government. *Nat'l Union of Police Officers Local 502-M, AFL-CIO v Wayne Co Bd of Comm'rs,* 93 Mich App 76, 82; 286 NW2d 242 (1979). This issue is without merit.

On the totality of the record we find no basis for reversal. The judgment of forfeiture is affirmed. Costs to appellee.

Affirmed.