# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

INDIA RENEE COUNTRYMAN,

Defendant-Appellant.

UNPUBLISHED
July 16, 2015

No. 316913
Wayne Circuit Court
LC No. 13-001730-FH

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES LAMONT COUNTRYMAN,

Defendant-Appellant.

No. 316919
Wayne Circuit Court
LC No. 13-001222-FH

Before: HOEKSTRA, P.J., and JANSEN and METER, JJ.

PER CURIAM.

Following a bench trial, in Docket No. 319613, defendant India Countryman ("India") appeals as of right her conviction for gambling activities – cheating at gambling, MCL 432.218(2)(f). Following a bench trial, in Docket No. 316919, defendant James Countryman ("James") appeals as of right his conviction for gambling activities – cheating at gambling, MCL 432.218(2)(f). Both defendants were sentenced to three years' probation for their convictions. For the reasons explained in this opinion, we affirm in both cases.

India and James are brother and sister, and James worked as a dealer at the Motor City Casino in Detroit, MI. On July 25, 2012, in violation of casino policies prohibiting a dealer from allowing family members to gamble at that dealer's table, James failed to alert the floor person of India's presence at his roulette table. Then, during one spin in particular, contrary to the

manner in which roulette is played, James failed to make a "wave-off;" that is, he failed to indicate that "no more bets" were allowed.[1]  When the wheel stopped spinning, the ball had landed on red 14.  James then made a "small hand gesture with his right hand towards the layout."  He then reached for the marker to mark the winning number on the layout, but hesitated before placing the marker and he looked over his shoulder toward the pit supervisor.  At that time, India placed a winning bet of $4,700 on red, as a result of which she won another $4,700.  Video surveillance footage showed that India placed her bet *after* the ball landed on red 14.  Contrary to casino policies, James also failed to callout India's large bet.[2]

When interviewed by police, India and James denied any wrongdoing.  James claimed that the ball stopped before he had expected it to land, which he is why he did not indicate that no more bets were allowed.  Inconsistent with James's version of events, however, India initially claimed that James waived his hand over the layout, and she placed her bet under his arm as he was doing so, meaning that, according to India, her bet was legitimate and James had indicated no more bets.  Notably, both India and James denied their sibling relationship.  Specifically, India denied even knowing James, and James indicated that India was a distant relative.

India and James were both charged with conspiracy to cheat at a gambling game, MCL 750.157a; MCL 432.218(2)(f), and cheating at a gambling game, MCL 432.218(2)(f).  They were tried in a joint bench trial.  India testified in her own behalf.  Inconsistent with her earlier statements, India claimed at trial that James had not indicated that no more bets were allowed and that she simply did not realize that she placed her bet after the ball fell into red 14.  She testified that she did not intend to cheat.

The trial court determined that the prosecutor had not presented sufficient evidence to establish a conspiracy beyond a reasonable doubt because there was no indication that defendants spoke to one another ahead of time.  Nonetheless, the trial court convicted both defendants of cheating at a gambling game under MCL 432.218(2)(f).  The trial court sentenced defendants as noted above.  Both defendants now appeal as of right.

## I.  TRIAL COURT'S FINDINGS

On appeal, India contends that the trial court failed to sufficiently articulate its findings of facts and conclusion of law as required by MCR 6.403 and MCR 2.517.  Specifically, India faults the trial court for failing to enumerate the elements of cheating at a gambling game and for failing to particularly find that India intentionally placed a bet knowing the outcome of the game.

---

[1] According to the testimony offered at trial, when playing roulette, players may continue to make bets until the dealer makes a wave-off, which the dealer does when the ball "starts to lose momentum," usually when the dealer believes there are only three more rotations left in the wheel.  At that time, to indicate that no more bets are allowed, the dealer may wave his hand across the layout and/or verbally announce "no more bets."

[2] Casino policy required that dealers callout any bet over $100.

In actions tried without a jury, the trial court shall find the facts specifically, state separately its conclusions of law, and direct entry of the appropriate judgment. MCR 2.517(A)(1); MCR 6.403. "Brief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without overelaboration of detail or particularization of fact." MCR 2.517(A)(2).[3] Moreover, this Court reviews a trial court's findings "in the context of the specific legal and factual issues raised by the parties and the evidence." *People v Lanzo Constr Co*, 272 Mich App 470, 479; 726 NW2d 746 (2006) (citation and quotation marks omitted). "If the trial court was aware of the issues in the case and correctly applied the law to the facts, its findings are sufficient." *Id.* In other words, a trial court's failure to find every element does not necessarily render a trial court's findings insufficient, particularly when "it is manifest that he was aware of the factual issue, that he resolved it and it would not facilitate appellate review to require further explication of the path he followed in reaching the result . . . ." *People v Jackson*, 390 Mich 621, 627 n 3; 212 NW2d 918 (1973).

In this case, the trial court's findings are sufficient. In particular, among other factual findings, the trial court concluded that James never made a "wave-off" and that India made her bet after "the ball had already fallen." Apparently responding to India's testimony that she was unaware the ball had fallen when she placed her bet, the trial court also plainly rejected any assertion that India's late bet was unintentional, concluding it was significant that James failed to alert the casino of his sister's presence at the table and that both defendants denied their sibling relationship when questioned. The trial court found that the "denial speaks volumes for the fact that they both knew that at that time they were going to cheat the casino . . . and that's what they did." In short, the trial court was plainly aware of India's assertion that her delayed betting was unknowing, and it rejected her testimony by instead finding that she cheated at a gambling game. In these circumstances it is clear that the trial court was aware of the factual issues, the trial court resolved the issues, and it would not facilitate appellate review to require further explanation. *Jackson*, 390 Mich at 627 n 3. Therefore, the trial court made sufficient finds of fact and conclusions of law pursuant to MCR 2.517(A)(1) and MCR 6.403.

## II. SUFFICIENCY OF THE EVIDENCE

Both India and James argue that insufficient evidence was presented to support their convictions. In particular, India maintains that cheating must be done knowingly and with an intent to defraud. She argues that there was insufficient evidence in this case to establish that she intentionally placed her bet knowing the outcome of the game. In comparison, James contends that there is no evidence he cheated because he had no control over where the ball landed and he did nothing more than to allow India to make a bet "as the ball dropped."

---

[3] MCR 6.403 pertains to bench trials in criminal cases involving a waiver of trial by jury, but this Court has explained that MCR 6.403 "incorporates MCR 2.517 and implicitly incorporates the existing body of decisional law. . . addressing issues such as the sufficiency of fact findings and the appropriate remedy when findings are insufficient." *People v Legg*, 197 Mich App 131, 134 n 1; 494 NW2d 797 (1992), quoting comments to MCR 6.403.

Following a bench trial, we review a defendant's challenge to the sufficiency of the evidence de novo. *Lanzo Const Co*, 272 Mich App at 473. When reviewing the sufficiency of the evidence, this Court must view the evidence in a light most favorable to the prosecutor and determine whether any trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Eisen*, 296 Mich App 326, 331; 820 NW2d 229 (2012). Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of the crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). Additionally, this Court will not interfere with the factfinder's role of determining the weight of evidence or the credibility of witnesses. *Eisen*, 296 Mich App at 331. Given the difficulty in proving knowledge or intent, "minimal circumstantial evidence will suffice to establish the defendant's state of mind." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Both defendants were convicted of cheating under MCL 432.218(2)(f), which provides:

(2) A person commits a felony punishable by imprisonment for not more than 10 years or a fine of not more than $100,000.00, or both, and, in addition, shall be barred for life from a gambling operation under the jurisdiction of the board if the person does any of the following:

* * *

(f) Cheats at a gambling game.

As defined by statute, to "cheat" is to "alter the selection of criteria which determine the result of a gambling game or the amount or frequency of payment in a gambling game, in violation of [the Michigan Gaming Control and Revenue Act, MCL 432.201 *et seq*.]." MCL 432.202(k). The term "gambling game" specifically includes roulette. MCL 432.202(v).

Regarding the *mens rea* required under MCL 432.218(2)(f), India argues that cheating requires knowledge and an intent to defraud, and that the prosecution was specifically required to prove that she intentionally placed a bet after she knew the outcome of the game.[4] To determine the criminal intent required, we begin by looking to the mental state set forth in the statute. *People v Fennell*, 260 Mich App 261, 266; 677 NW2d 66 (2004). In this case, MCL 432.218(2)(f) is silent on the required mental state. Nonetheless, although the statute does not

---

[4] In making this argument, India relies in part on MCL 432.218(2)(i), which prohibits a person from placing "a bet after acquiring knowledge, not available to all players, of the outcome of the gambling game that is the subject of the bet . . . ." India also analogizes to MCL 432.218(2)(j), which states, in part, that an individual may not claim or take money or anything of value from the gambling games, "with an intent to defraud," without having made a wager contingent on winning a gambling game. However, India was not convicted under MCL 432.218(2)(i) or (j); rather, she was convicted under MCL 432.218(2)(f). Consequently, her reliance on MCL 432.218(2)(i) and (j) is misplaced, and we decline to incorporate the *mens rea* requirements of MCL 432.218(2)(i) and (j) into MCL 432.218(2)(f).

specify a *mens rea*, we see no indication, express or implied, that the Legislature intended to create a strict liability crime and thus "inferring some type of guilty knowledge or intent is necessary . . . because without it innocent conduct could be criminalized." *People v Kowalski*, 489 Mich 488, 499 n 12; 803 NW2d 200 (2011). When considering the required mental state, "[a] crime requiring a particular criminal intent beyond the act done is generally considered a specific intent crime; whereas, a general intent crime merely requires the intent to perform the physical act itself." *Fennell*, 260 Mich App at 266 (citation and quotation marks omitted).

Turning to MCL 432.218(2)(f), given the Legislature's use of the verb "cheats," it is clear that the statute requires intentional conduct by a defendant. Cf. *Kowalski*, 489 Mich at 500 (concluding that, in the absence of an express *mens rea* requirement, statutory use of the verb "encourages" contemplates intentional conduct by a defendant). Specifically, the statute envisions that the actor have an intent to cheat, i.e., an intent to alter the selection of criteria which determine the result of a gambling game or the amount or frequency of payment in a gambling game. See MCL 432.202(k); MCL 432.218(2)(f). Because no specific intent beyond that necessary to cheat is contained in the statute, it also seems plain that the statute envisions a general criminal intent. See *Fennell*, 260 Mich App at 266. Contrary to India's arguments, there is no specific intent, such as a specific intent to defraud, required above and beyond the mental state necessary to cheat.

When viewed in the light most favorable to the prosecution, sufficient evidence was presented to convict India of cheating at a gambling game. Evidence was presented that India went to the casino and sat at the roulette table where her brother James was dealing. While India was sitting at James's roulette table, James spun the ball in the roulette wheel and other gamblers at the table placed their bets. As the ball began to lose momentum, James did not indicate to the players that no more bets were allowed. After the ball landed in the red 14 slot, James made a small hand gesture towards the layout, reached for the marker to mark the winning number, hesitated, and looked over his shoulder. At that point, India placed her bet on red, *after* the ball had stopped. By placing her bet after the ball landed, India eliminated, and thus altered, the element of chance that otherwise selects the criteria to determine the winner in a game of roulette or the amount or frequency of payment in roulette. See MCL 432.202(k). That she intended to cheat in this manner can be reasonably inferred from her actions and words, including the fact that she sat at her brother's table, that she placed a bet *after* the ball stopped following a spin during which her brother failed to wave-off, and the fact that she subsequently denied her relationship with James. In short, her conduct was such that a rational trier of fact could find that she cheated and that she intended to cheat. Therefore, sufficient evidence was presented to support India's conviction under MCL 432.218(2)(f).

James contends that insufficient evidence was presented to convict him of cheating at a gambling game because no evidence was presented that James was able to control where the ball would land on the roulette wheel and the evidence only demonstrated that James allowed India to bet "as the ball dropped." Although no evidence was presented that James had control of where the ball would land, evidence presented that James was an experienced dealer but allowed his sister to sit at his roulette table despite the casino's policy, and he spun the wheel but did not indicate to the players that no more bets were allowed. James subsequently made "a small hand gesture with his right hand towards the layout," reached for the marker to mark the winning number, hesitated, and looked over his left shoulder after the ball had landed on the red 14 slot

and then allowed India to make a $4,700 bet on red. Despite James's contention that he only allowed India to place a bet "as the ball dropped," the surveillance video indicates that James allowed India to make a bet *after* the ball fell into the red 14 slot. James also failed to callout India's large bet, and when confronted about India's bet, James then denied their sibling relationship. Given the evidence presented, a rational trier of fact could find that, by allowing India to place a bet after the ball landed, James altered the selection of criteria which determine the result of a gambling game or the amount or frequency of payment in a gambling game. Therefore, when viewed in the light most favorable to the prosecution, sufficient evidence was presented that James cheated at a gambling game.

### III. ADMISSION OF PHOTOGRAPHS

India next contends that the trial court abused its discretion when it admitted five photographs of the roulette wheel and table, which were taken by Michigan State Police Officer Jennifer Schlaufman shortly before trial. According to India, these photographs constituted "reenactment" evidence and the photographs were inadmissible for this purpose because they were inaccurate, misleading, and non-probative. Further, because the photographs were not taken until a few days before trial, India claims her late notice of the photographs constituted a *Brady*[5] violation and deprived her of due process. Alternatively, India complains that defense counsel was ineffective for failing to object to the photographs or move for a continuance.

At trial, defense counsel offered an initial objection to the photographs, arguing that the photographs failed to accurately depict the scene. To the extent India reiterates this argument on appeal, her claim is preserved and reviewed for an abuse of discretion. See *People v Gayheart*, 285 Mich App 202, 227; 776 NW2d 330 (2009). However, an objection on one ground is not sufficient to preserve an objection on a different ground, meaning that the majority of India's challenges relating to the photographs are unpreserved and reviewed for plain error affecting her substantial rights. See *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003). Because India's ineffective assistance of counsel claim is unpreserved our review is limited to errors apparent on the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

First, India contends that, as an evidentiary matter, the five photographs of the roulette table and wheel were inadmissible because the photographs constituted reenactment evidence that was not "identical with or substantially similar to the conditions" of the crime scene at the time of the offense. India's claim is without merit because the photographs were not offered as an attempt to recreate the event; rather, the photographs were admitted as an aid to illustrate Officer Schlaufman's testimony. That is, "re-creation" evidence is only admissible if it "faithfully reproduces the conditions that existed at the time in question." *Lopez v Gen Motors Corp*, 224 Mich App 618, 627-628 n 13; 569 NW2d 861 (1997). In contrast, when evidence is offered, not in an effort to recreate an event, but as an aid to illustrate a witness's testimony regarding issues related to an event, "there need not be an exact replication of the circumstances of the event." *Bulmer*, 256 Mich App at 35. Instead, demonstrative evidence is generally

---

[5] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

admissible as long as it is relevant, MRE 401, and not unduly prejudicial, MRE 403. *People v Unger*, 278 Mich App 210, 247; 749 NW2d 272 (2008).

As described on the record at trial, the photographs were taken from the chair occupied by India and they depict the roulette wheel as well as the layout. Officer Schlaufman testified that she went to the casino and sat in the chair to see if the seat had a vantage point of the wheel. The photographs served as nothing more than an illustration of what Officer Schlaufman described. See *People v Mills*, 450 Mich 61, 76; 537 NW2d 917 (1995), mod 450 Mich 1212 (1995) ("Photographs may also be used to corroborate a witness' testimony."); see also *Bulmer*, 256 Mich App at 35. There was no suggestion that the photographs were intended as a recreation of the conditions at the time of the offense and there was in fact ample discussion of the differences in the conditions present at the time of the offense as compared to when Officer Schlaufman took the photographs. Additionally, the photographs were relevant and not unduly prejudicial. Consequently, the trial court did not abuse its discretion when it admitted the photographs. Moreover, even supposing some error, it is not more probable than not that the introduction of these photographs was outcome determinative, particularly given the video evidence of the offense and the conditions at the time of the offense. See *People v Lukity*, 460 Mich 484, 496; 596 NW2d 607 (1999).

Second, relying in part on *Brady*, India asserts that her late notice of the photographs denied her due process and inhibited her ability to present a defense. In particular, according to India, the late notice prevented her from investigating the accuracy of the photographs, formulating a proper motion to suppress, and taking her own photographs of the scene. To the extent India's argument relies on *Brady*, to state such a claim a defendant must show that: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014). India's purported *Brady* claim fails on all counts because (1) the prosecution provided India with the photographs at trial, (2) the photographs were *not* favorable to India, and (3) given the other evidence supporting India's conviction, there was not a reasonable probability that the result of the proceeding would have been different if the evidence had been disclosed to India sooner, meaning that the photographs were not "material" within the meaning of *Brady*. See *id.*; *United States v Fields*, 763 F3d 443, 458 (CA 6) (recognizing that there is no *Brady* violation where evidence is made available for a defendant's use in time for trial).

Far from establishing a *Brady* violation, at most, India's argument suggests that the prosecutor delayed in its discovery disclosures under MCR 6.201. However, contrary to India's framing of the issue, a discovery violation would not give rise to a due process claim because "[t]here is no general constitutional right to discovery in a criminal case." *People v Elston*, 462 Mich 751, 765; 614 NW2d 595 (2000). In any event, even if the prosecutor should have disclosed the photographs sooner, this potential discovery violation would not entitle India to relief because a more appropriate remedy would have been a continuance and India failed to move for a continuance at trial. See *id.* at 764. Further, given the other evidence of her guilt, she has not shown prejudice from the photographs' admission, meaning she is not entitled to relief on this basis. See *People v Greenfield*, 271 Mich App 442, 454 n 10; 722 NW2d 254 (2006).

Third, to the extent India contends that defense counsel provided ineffective assistance by failing to move for a continuance or to object at trial, her claim is without merit. As discussed,

the photographs were admissible and no *Brady* violation occurred, meaning that any objection on these bases would have been futile, and counsel is not ineffective for failing to make a futile objection. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). Further, we note briefly that counsel did offer an initial objection to the photographs based on the assertion that they were not an accurate representation of the scene, and defense counsel then questioned Officer Schlaufman as well as India regarding whether the photographs portrayed the conditions at the time of the offense in question. We see nothing unreasonable in adopting this trial strategy as opposed to moving for a continuance, cf. *Elston*, 462 Mich at 763-764; and India has not overcome the presumption that counsel provided effective assistance. *People v Heft*, 299 Mich App 69, 83-84; 829 NW2d 266 (2012). Given the other evidence of her guilt, including the video evidence, India has also failed to show a reasonable probability that, but for counsel's alleged errors, there was a reasonable probability of a different outcome. *Id.* at 84-85. Thus, she was not denied the effective assistance of counsel.

## IV.  RIGHT TO REMAIN SILENT

India also contends that the prosecutor committed prosecutorial error when it elicited testimony from Officer Schlaufman regarding India's post-*Miranda*[6] silence, and when the prosecutor then commented regarding India's post-*Miranda* silence during closing arguments. Alternatively, India argues that counsel provided ineffective assistance by failing to object.

India failed to object to the prosecutor's conduct at trial or to request a curative instruction, meaning that her prosecutorial misconduct claim is unpreserved and reviewed for plain error. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). When reviewing a claim of prosecutorial misconduct, we consider the record as a whole and evaluate a prosecutor's remarks in context to determine whether defendant was denied a fair trial. *People v Hicks*, 259 Mich App 518, 522; 675 NW2d 599 (2003). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *Unger*, 278 Mich App at 236. And, a good faith effort to introduce evidence the prosecutor legitimately believes will be accepted does not constitute prosecutorial misconduct. *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). Typically, a prosecutor may not, however, reference a defendant's post-*Miranda* silence when the defendant's silence is attributable to an invocation of his Fifth Amendment privilege or a reliance on *Miranda* warnings. *People v Shafier*, 483 Mich 205, 212-213; 768 NW2d 305 (2009); *People v McReavy*, 436 Mich 197, 201; 462 NW2d 1 (1990).

In this case, Officer Schlaufman read India her *Miranda* rights, and India waived those rights and agreed to speak with Officer Schlaufman. It appears, however, that India then revoked that waiver by telling Officer Sclaufman that she "no longer wanted to talk," and the interview ceased at that time. See *Berghuis v Thompkins*, 560 US 370, 388-389; 130 S Ct 2250; 176 L Ed 2d 1098 (2010). Because India revoked her earlier waiver, the prosecutor could not introduce evidence of her subsequent silence or comment on it during closing. See *McReavy*, 436 Mich at 218 n 22; *People v Gallon*, 121 Mich App 183, 188; 328 NW2d 615 (1982).

---

[6] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; L Ed 2d 694 (1966).

On appeal, India challenges a colloquy between Officer Schlaufman and the prosecutor, during which Officer Schlaufman referred to the fact that India "no longer wanted to talk to" Officer Schlaufman. This exchange was as follows:

[*The Prosecutor*]: And you confronted her with that information [about the fact that her car was registered to James's address], is that correct?

[*Officer Schlaufman*]: That's correct

[*The Prosecutor*]: Okay, and what was her response?

[*Officer Schlaufman*]: She indicated to me that she'd only registered it for her, for the father of her child, that he wanted the vehicle, but I explained to her that it was registered in her name and at the dealer's address and I found it ironic that she doesn't know this man but she's registering the vehicle in her name to his address. She told me that was the address that her, that the father of the baby wanted her to register it to.

[*The Prosecutor*]: Okay. That ended the third interview, is that correct?

[*Officer Schlaufman*]: Well, I pointed out to her that you can't just register a vehicle to any address you want to, you have to prove that you reside at that address, and at that point she no longer wanted to talk to me.

Contrary to India's arguments, we see no misconduct in the prosecutor's questions to Officer Schlaufman. The prosecutor did not solicit a comment on whether India invoked her right to remain silent. Cf. *People v Sain*, 407 Mich 412, 415; 285 NW2d 772 (1979). Rather, it appears that the prosecutor believed the interview ended with India's explanation for her registration of the vehicle, and, in good faith, the prosecutor merely wanted to elicit the officer's confirmation that this statement ended the third interview. In response to a yes or no question, Officer Schlaufman instead volunteered the information that India had invoked her right to remain silent. Because the remark was volunteered by Officer Schlaumfman, and we see no indication that the prosecutor encouraged this testimony or conspired to bring it forth, we discern no prosecutorial misconduct in the prosecutor's good faith questioning. See *Noble*, 238 Mich App at 660; *People v Waclawski*, 286 Mich App 634, 710; 780 NW2d 321 (2009). Moreover, even assuming some error, this brief remark was offered without objection from defendant and, given the evidence of India's guilt, this evidence did not affect the outcome of the proceedings, meaning India has not shown plain error entitling her to relief. *Callon*, 256 Mich App at 329.

Aside from Officer Schlaumfman's testimony, India also contends that prosecutorial error occurred during closing argument when the prosecutor referenced her silence and stated:

But what do we find out? We find out that she is the beneficiary on his insurance. He names two beneficiaries: Christine Country and India Countryman. Clearly, there's more than simply a distant relationship there. They have the same address. Well, at least they use the same address for something; and she's on his insurance policy as a beneficiary.

-9-

When Detective Schlaufman confronts India Countryman with this fact, [India] goes silent. She doesn't want to speak anymore.

We agree that the prosecutor should not have referred to India's post-*Miranda* invocation of her right to remain silent. See *Shafier*, 483 Mich at 212-213; *McReavy*, 436 Mich at 218 n 22. Nonetheless, India has not shown that this prosecutorial error affected the outcome of the proceedings. The prosecutor's remark was relatively brief and there was other substantial evidence of India's guilt, including the surveillance video which was played at trial. Cf. *People v Borgne*, 483 Mich 178, 196; 768 NW2d 290 (2009). Further, defendant was tried in a bench trial, and a judge is presumed to know the law, including "the difference between admissible and inadmissible evidence or statements of counsel." *People v Wofford*, 196 Mich App 275, 282; 492 NW2d 747 (1992). Consequently, the trial court would have known to ignore any improper remarks by counsel, see *id.*, and, in fact India's silence was not referenced at all in the trial court's explanation of its findings. On this record, India has failed to demonstrate she was prejudiced by the prosecutor's brief reference to India's silence.

To the extent India contends that defense counsel provided ineffective assistance by failing to object to Officer Schlaufman's testimony or the prosecutor's closing argument, her claim is unavailing. While counsel might have offered a successful objection, counsel could reasonably have determined that it was unnecessary to offer an objection in a bench trial, given that the court is presumed to know the law. *Wofford*, 196 Mich App at 282. Thus, India has not overcome the presumption that counsel provided effective assistance. *Heft*, 299 Mich App at 83-84. Further, given the other evidence of her guilt, including the video evidence, India has also failed to show a reasonable probability that, but for counsel's alleged errors, there was a reasonable probability of a different outcome. *Id.* at 84-85. Thus, she was not denied the effective assistance of counsel.

## V. IMPROPER OPINION TESTIMONY

Next, India argues that Officer Schlaufman impermissibly invaded the province of the fact-finder by identifying India in the surveillance video and opining that India placed her bet after the outcome of the game was known. In a related argument, India contends that the prosecutor impermissibly "testified" by describing the contents of the video. Alternatively, India argues that she was denied the effective assistance of counsel because counsel failed to object.

Generally, opinion testimony by a lay witness is permitted if the testimony is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." MRE 701. However, "a witness cannot express an opinion on the defendant's guilt or innocence of the charged offense." *People v Fomby*, 300 Mich App 46, 53; 831 NW2d 887 (2013) (citation omitted). Moreover, when "a jury is as capable as anyone else of reaching a conclusion on certain facts, it is error to permit a witness to give his own opinion or interpretation of the facts because it invades the province of the jury." *People v Drossart*, 99 Mich App 66, 80; 297 NW2d 863 (1980). For example, typically, if a jury is equally capable of identifying the individual shown in a video or photograph, a lay witness who has viewed a video may not identify a defendant as the individual depicted in the video or photograph. See *Fomby*, 300 Mich App at 52-53.

-10-

India contends that Officer Schlaufman offered impermissible opinion testimony when Officer Schlaufman testified, based on her viewing of the video, that India placed a bet "after the outcome of the game was known." Any claim of error in this regard is unavailing, however, because the trial court is presumed to know the law when conducting a bench trial and would thus have known that Officer Schlaufman could not invade the province of the fact-finder. See *Wofford*, 196 Mich App at 282. Indeed, India's claim of error in this respect is wholly disingenuous given that the trial court interrupted Officer Schlaufman's testimony, and stated that this testimony "invaded the province" of the fact-finder. Aside from the fact that a trial court is presumed to know the law, this sua sponte interruption and recognition that the trial court would decide whether India placed a bet after the conclusion of the game cured any conceivable error and India is not entitled to relief. To the extent Officer Schlaufman identified India in the video, this identification impermissibly invaded the province of the fact-finder, *Fomby*, 300 Mich App at 52-53, but we fail to see how India was prejudiced given that India's identity was not at issue at trial. That is, there has been no suggestion that India did not appear on the video playing roulette at James's table. Indeed, India fully admitted at trial that she played roulette at James's table. Therefore, India was not prejudiced by the error.

Insofar as India contends that the prosecutor "testified" by describing the video on the record, this claim is equally without merit. We see nothing wrong in the prosecutor verbally describing something for transcription in the record. Further, it is axiomatic that the remarks of counsel are not evidence. *Thomas*, 260 Mich App at 454. The trial court viewed the video for itself and is presumed to know that the prosecutor's remarks were not evidence. See *Wofford*, 196 Mich App at 282. Indeed, again it is obvious that the trial court understood this matter of law because the trial court admonished the prosecutor that she could not testify. India has not shown prejudice from the prosecutor's remarks and is not entitled to relief on this basis.

Finally, to the extent India claims counsel was ineffective for failing to object to the prosecutor's remarks or Officer Schlaufman's allegedly improper opinion testimony, her claim is without merit. Because the trial court is presumed to know the law and the trial court in fact offered sua sponte interjections regarding these challenged remarks, it is clear that India suffered no prejudice. *Heft*, 299 Mich App at 83-84. Thus, she was not denied the effective assistance of counsel.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Kathleen Jansen
/s/ Patrick M. Meter

-11-