PEOPLE v WOFFORD

Docket No. 120233. Submitted May 21, 1992, at Detroit. Decided July 10, 1992; approved for publication October 14, 1992, at 9:00 A.M.

Derrick Wofford was convicted following a bench trial in the Recorder's Court of Detroit, Dalton A. Roberson, J., of voluntary manslaughter and possession of a firearm during the commission of a felony. The court found that the defendant was not guilty of second-degree murder as charged, because the fatal shots were fired while the defendant was influenced by passion and provocation caused by a confrontation on the previous day during which he had been shot at by the decedent. The defendant appealed.

The Court of Appeals *held:*

1. Although the court apparently confused the elements of first-degree and second-degree murder, its findings clearly show that the defendant had the requisite intent necessary to be convicted of second-degree murder. While it was error for the court to convict the defendant of the included offense of voluntary manslaughter, the error benefited the defendant.

2. There is no merit to defendant's argument that the court erred in failing to find whether the evidence supported the lesser included offense of negligent discharge of a firearm. There is no evidence that the defendant negligently discharged his gun.

3. Any error resulting from the refusal of the court to permit impeachment of a witness concerning a statement regarding the removal of a gun from the body of the decedent is harmless in view of the fact that the court concluded that the decedent was in possession of a gun when killed.

4. Because the defendant failed to object at trial to allegedly improper comments by the prosecutor, appellate review is precluded absent manifest injustice. Because the defendant was tried before a judge rather than a jury, and the judge is presumed to possess an understanding of the law, error, if any, is harmless.

5. Errors in the sentencing information report entitle the defendant to a remand for resentencing for the voluntary manslaughter conviction.

Affirmed in part and remanded for resentencing for the voluntary manslaughter conviction.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Jeffrey Caminsky,* Assistant Prosecuting Attorney, for the people.

*Mark H. Magidson,* for the defendant on appeal.

Before: Shepherd, P.J., and Murphy and P. D. Houk,* JJ.

Per Curiam. Defendant was charged with second-degree murder and possession of a firearm during the commission of a felony as a result of the shooting death of sixteen-year-old Spencer Thomas on the evening of May 24, 1989. Following a bench trial, defendant was found guilty of voluntary manslaughter, MCL 750.321; MSA 28.553, and felony-firearm, MCL 750.227b; MSA 28.424(2). The trial court sentenced defendant to a term of five to fifteen years for the voluntary manslaughter conviction and to a mandatory two-year term for the felony-firearm conviction. Defendant appeals as of right.

The fatal shooting of Spencer Thomas arose out of an altercation involving the decedent and defendant the previous day. While at work, defendant was informed by Toya Reed, Kevin Lee, and defendant's boss that "a guy was threatening him," apparently because defendant was romantically involved with Toya Reed, who was Kevin Lee's girl friend. Later, while looking for Lee in order to find out more about the threat, defendant encountered the decedent, who was Lee's cousin, and asked him whether he was threatening defendant because of Toya Reed and why. An argument ensued, and the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

decedent took out a gun. The decedent then fired a shot, missing defendant as he was leaving in his car. On the evening of the following day, May 24, 1989, the decedent was sitting on his porch when defendant and Toya Reed arrived in defendant's car. Defendant got out of his car, took a gun from the back of the vehicle, and confronted the decedent, who also had a gun. Defendant shot the decedent three times, hitting him in the back at least twice. According to the autopsy report, the decedent died of a gunshot wound to the right upper back.

Manslaughter is a common-law crime, not statutorily defined. MCL 750.321; MSA 28.553. In *People v Pouncey*, 437 Mich 382, 388; 471 NW2d 346 (1991), the Supreme Court remarked:

> Murder and manslaughter are both homicides and share the element of being intentional killings. However, the element of provocation which characterizes the offense of manslaughter separates it from murder. Murder and manslaughter are separate offenses, but . . . voluntary manslaughter is a cognate lesser included offense of murder.

The Supreme Court then set forth the following test for voluntary manslaughter:

> First, the defendant must kill in the heat of passion. Second, the passion must be caused by an adequate provocation. Finally, there cannot be a lapse of time during which a reasonable person could control his passions. [*Id.*]

In Michigan, the common-law crime of murder is second-degree murder, whereas first-degree murder is a statutory crime. *People v Allen*, 390 Mich 383; 212 NW2d 21 (1973). To establish second-de-

gree murder, MCL 750.317; MSA 28.549, the prosecution must show that defendant caused the death of the victim and that the killing was done with malice and without legal justification or excuse. *People v Harris,* 190 Mich App 652, 659; 476 NW2d 767 (1991). Malice consists of the intent to kill, the intent to do great bodily harm, or the intent to create a high risk of death or great bodily harm with knowledge that either is the probable result, and may be inferred from the facts and circumstances of the killing. *Id.* To establish first-degree murder, MCL 750.316; MSA 28.548, the prosecution is required to prove that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v Saunders,* 189 Mich App 494, 496; 473 NW2d 755 (1991). Premeditation and deliberation may be inferred from the circumstances surrounding the killing. *Id.*

In the present case, defendant was charged with second-degree murder, but was found guilty of voluntary manslaughter. The trial court specifically found:

> . . . Whether or not [defendant] left home with the intention of shooting or killing anyone over there, I'm not sure and I have to have a reasonable doubt as that particular element of murder.
>
> But, on the other hand, I think the fact . . . that he did not go over there to have a normal, reasonable conversation with the deceased, to settle this matter.
>
> I think that he went back over there with his gun, recognizing that [if] trouble arose he would be in a position to handle it. I think that when [he] put himself in the position like that, I don't think that he can come in and say he was threatened, he felt like his life was threatened. . . .
>
> All the testimony shows that Mr. Wofford got

out of the car, went to the back of his car and pulled a weapon and fired.

Miss Pearson testified that she never saw a weapon and this defendant testified that he never saw a weapon from Spencer. I believe that Spencer had a weapon on him. I don't think that this defendant ever gave him an opportunity to pull it.

I think that he was still mad about what happened to him before and he did not take it lightly.

I believe beyond any reasonable doubt that the defendant at the time of the act, was disturbed by mental or emotional excitement which make an ordinary person likely to act rationally without due deliberation or reflection and from passion rather than judgment. Secondly, I believe that the killing was a result of provocation or passion and that occurred before reasonable time had elapsed and that this defendant had time to cool, even though 24 hours is a considerable period of time. However, the law does not say how long a reasonable time is and I think that this defendant when he went over there fired at [the] decease[d] three times, hitting him in the back at least twice. This indicates that he was not, his life was not threatened to the point where he had no other alternative but to kill the defendant.

Defendant claims that the trial court committed error requiring reversal in finding that he did not have the requisite intent to kill or to do serious bodily harm. We disagree.

The trial court apparently confused the elements of first- and second-degree murder. In stating a reasonable doubt about whether defendant intended to shoot or kill anyone when he left home, the trial court apparently was considering whether defendant's act of killing was premeditated and deliberate, an essential element of first-degree murder. Notwithstanding this possible confusion, the trial court's findings clearly show that defendant possessed the requisite intent for sec-

ond-degree murder when he returned to decedent's house with a gun and fired three shots at the decedent.

In finding defendant guilty of voluntary manslaughter, the trial court concluded that the killing occurred in circumstances of passion and provocation before sufficient time had elapsed to enable defendant to control his passions. While the trial court correctly noted that, as a matter of law, no precise time has been established during which passion must subside, the "cooling off" period must be reasonable. *Maher v People,* 10 Mich 212, 219 (1862); *Pouncey, supra,* p 388. Recently, in *Pouncey,* the Supreme Court reversed this Court's decision and held that the trial court correctly refused the requested jury instruction on voluntary manslaughter where approximately thirty seconds was sufficient to constitute a "cooling off" period.

In this case, we believe that sufficient time had passed for defendant to control his passions and that a "cooling off" period of twenty-four hours was not reasonable. The trial court's findings reveal that defendant chose to return to the decedent's house with a gun because defendant was angry about what had happened to him the day before. Defendant was not compelled to go back to the decedent's house and could have stayed away. *Id.* Although the trial court committed clear error in finding that sufficient time had not passed to enable defendant to indulge in cool reflection, MCR 2.613(C), this error benefited the defendant and is not appealable by the prosecutor. MCL 770.12; MSA 28.1109.

Defendant next argues that the trial court committed error requiring reversal by failing to find whether the evidence supported the lesser included offense of negligent discharge of a firearm. Defendant's allegation is without merit. There is

no evidence that defendant negligently discharged his gun. *People v Maghzal,* 170 Mich App 340, 347; 427 NW2d 552 (1988). Moreover, the evidence leaves no doubt that defendant intended to shoot the decedent.

Defendant further argues that he was denied his right to confrontation of witnesses under the Sixth Amendment of the United States Constitution when his defense counsel was not permitted to cross-examine a prosecution witness regarding a prior inconsistent statement. The witness, Kevin Lee, was asked on cross-examination whether witness Antoine Thomas had made a statement to Kevin Lee to the effect that he had removed a gun from the body of the deceased. The trial court ruled that whether the witness said that he took a gun from the body of the deceased was a collateral matter. Defendant contends that the trial court abused its discretion because the matter was important not only to show bias, but also to establish defendant's theory of self-defense.

The impeachment of a witness regarding a collateral matter is within the sound discretion of the trial court. *People v Slaton,* 135 Mich App 328; 354 NW2d 326 (1984); *People v McConnell,* 124 Mich App 672; 335 NW2d 226 (1983). While the trial court may have committed error, inasmuch as the deceased's possession of a gun is not a collateral matter, the error was harmless. MCR 2.613. There was testimony by Tywanna Pearson that the decedent had a gun when defendant shot him. Moreover, the trial court concluded that the decedent had a gun when he was killed.

Defendant next alleges that two instances of prosecutorial misconduct denied him a fair trial. The first instance involved the prosecutor's comment concerning the failure of a prosecution witness, Tywanna Pearson, to appear. Defendant also

alleges that the prosecutor improperly shifted the burden of proof in closing argument when he stated that defendant had not shown self-defense.

We note that defendant did not object to the two separate remarks, thus precluding appellate review absent manifest injustice. *People v Gonzalez,* 178 Mich App 526, 534-535; 444 NW2d 228 (1989). After having reviewed the pertinent portions of the record and evaluated the prosecutor's remarks in context, we conclude that there was no manifest injustice. *People v Foster,* 175 Mich App 311, 317; 437 NW2d 395 (1989). Moreover, any error was harmless. Defendant was tried before a judge, not a jury. Unlike a jury, a judge is presumed to possess an understanding of the law, which allows him to understand the difference between admissible and inadmissible evidence or statements of counsel. *People v Jones,* 168 Mich App 191, 194; 423 NW2d 614 (1988).

Finally, defendant claims, and the prosecutor agrees, that he is entitled to a remand for resentencing because of inaccuracies in the sentencing information report. *People v Walker,* 428 Mich 261; 407 NW2d 367 (1987). We also agree. Accordingly, we affirm the convictions and the mandatory two-year sentence for felony-firearm, but remand for resentencing under the current guidelines for the voluntary manslaughter conviction.

Convictions affirmed, remanded for resentencing for voluntary manslaughter.