# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KENNETH FRAZIER,

Defendant-Appellant.

UNPUBLISHED
April 16, 2015

No. 319999
Wayne Circuit Court
LC No. 13-006280-FC

Before: HOEKSTRA, P.J., and MARKEY and DONOFRIO, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial conviction of second-degree murder, MCL 750.317. The trial court sentenced defendant to 20 to 30 years' imprisonment for that conviction. We affirm.

On appeal, defendant raises two issues: (1) whether sufficient evidence existed to support his conviction for second-degree murder instead of the lesser-included offense of voluntary manslaughter; and (2) whether the trial court abused its discretion by making handwritten alterations to the sentencing information report, thereby leaving stricken information legible. We address each issue respectively.

## I. SUFFICIENCY OF THE EVIDENCE

This Court performs a de novo review regarding the sufficiency of the evidence presented during a bench trial. *People v Wilkens*, 267 Mich App 728, 738; 705 NW2d 728 (2005). The evidence is viewed in the "light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). Further, the reviewing court must "draw all reasonable inferences and make credibility choices in support of the . . . verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

There are four elements for second-degree murder: "(1) death, (2) caused by defendant's act, (3) with malice, and (4) without justification." *People v Mendoza*, 468 Mich 527, 534; 664 NW2d 685 (2003), citing *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Goecke*, 457 Mich at 464. On the other hand,

-1-

manslaughter is, quite simply, "murder without malice." *Mendoza*, 468 Mich at 534. Thus, "manslaughter is a necessarily included lesser offense of murder." *Id.* at 533.

Voluntary manslaughter occurs when a defendant "killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Id.* at 535. It is important to note that "provocation is not an element of voluntary manslaughter." *Id.* at 536. Instead, legally adequate provocation "is the circumstance that negates the presence of malice." *Id.*

The burden is not on the defendant to prove adequate provocation by a preponderance of the evidence. *People v Mette*, 243 Mich App 318, 325-326; 621 NW2d 713 (2000), citing *Mullaney v Wilbur*, 421 US 684; 95 S Ct 1881; 44 L Ed 2d 508 (1975). Similarly, the prosecution does not "bear the burden of disproving beyond a reasonable doubt every fact constituting 'any and all affirmative defenses relating to the culpability of the accused.'" *Mette*, 243 Mich App at 326, quoting *Patterson v New York*, 432 US 197, 210; 97 S Ct 2319; 53 L Ed 2d 281 (1977). Instead, the fact-finder may properly consider provocation to mitigate second-degree murder to manslaughter where "a modicum of evidence of provocation" exists. *People v King*, 98 Mich App 146, 152; 296 NW2d 211 (1980).

"[T]he provocation must be adequate, namely, that which would cause the reasonable person to lose control. Not every hot-tempered individual who flies into a rage at the slightest insult can claim manslaughter." *People v Pouncey*, 437 Mich 382, 389; 471 NW2d 346 (1991) (citations omitted). But what constitutes reasonable provocation is a question of fact for the fact-finder. *Id.* at 390. Further, while there is no precise timetable established by law, the "cooling-off" period during which a reasonable person would presumably control his or her passion has often been found to be a relatively short period of time. See, e.g., *id.* at 392 (explaining that 30 seconds was an adequate cooling-off period); *People v Wofford*, 196 Mich App 275, 280; 492 NW2d 747 (1992) (stating that 24 hours was sufficient time for the defendant "to control his passions").

It is undisputed that the victim died as a result of being struck by defendant numerous times in the head with a large board. Defendant argues, however, that the prosecution did not present sufficient evidence to support his conviction for second-degree murder because legally adequate provocation negated the element of malice. The evidence adduced at trial, viewed in the light most favorable to the prosecution and with all reasonable inferences drawn in favor of the verdict, supports the conclusion that defendant acted with malice and without legally adequate provocation that would cause him to act in the heat of passion.

First and foremost, at the time of the incident, there were no identifiable acts of provocation. Instead, defendant's girlfriend testified that she and the victim were sitting, talking on the porch when defendant came from around the side of the house carrying a "real long board" and struck the still-seated victim.

Defendant argues, however, that he had adequate provocation because of prior instances when the victim had assaulted both defendant and defendant's girlfriend. Accepting defendant's position that the prior assaults constituted adequate provocation, the evidence nonetheless establishes that defendant had ample time to "cool off." Defendant's girlfriend testified that the

victim last assaulted defendant approximately six months before defendant killed the victim. Six months is simply too great a "cooling off" period; a reasonable person would not, on sight, bludgeon another person to death with a board over something that had occurred six months earlier. See *Wofford*, 196 Mich App at 280. Similarly, defendant cannot rely on any alleged assault on defendant's girlfriend by the victim. In close temporal proximity to the victim's death, the alleged assault on defendant's pregnant girlfriend or her resulting miscarriage might well have been legally adequate provocation; however, it was never established at trial when that alleged assault or miscarriage occurred. Thus, without any indication of when the victim allegedly assaulted defendant's girlfriend, it is impossible to determine precisely what "cooling off" period existed. However, given that the girlfriend and the victim were having a cordial conversation on the porch, a fact-finder could infer that the assault resulting in her miscarriage was not recent. Hence, the evidence supported a conclusion that defendant was not acting in the "heat of passion."

Finally, there is ample evidence to support the conclusion that defendant acted with malice. Malice may be inferred from the facts and circumstances of a killing, including the use of a deadly weapon, and a fact-finder "may infer malice from evidence that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *People v Carines*, 460 Mich 750, 759; 597 NW2d 130 (1999). It is uncontroverted that defendant killed the victim by striking him several times in the head with a long, heavy board, including one strike to the back of the head while the victim was falling to the ground. An expert in forensic pathology testified that "a large amount of force" was necessary to cause the extensive damage that the victim suffered to his head and, in describing the injuries depicted in the autopsy pictures, the trial court stated that the victim's "head was caved in he was hit so hard." The use of such an amount of force with a deadly weapon certainly supports a reasonable inference that defendant acted with malice.

Thus, sufficient evidence existed to support defendant's second-degree murder conviction.

## II. ALTERATION OF THE SENTENCING INFORMATION REPORT

At sentencing, the trial court made handwritten alterations to both the offense variables and guidelines range on the sentencing information report (SIR). While the changes were favorable to defendant and lowered both the scores and guidelines range, defendant now argues that the trial court abused its discretion by simply crossing out the previous scores and guidelines range, leaving the crossed-out numbers visible, instead of deleting those numbers entirely or preparing a new SIR with corrected information.

Because defendant failed to object to the trial court's method of altering the SIR, this issue is unpreserved. *People v McCrady*, 244 Mich App 27, 32; 624 NW2d 761 (2000). We review unpreserved issues for plain error affecting defendant's substantial rights. *People v Sexton*, 250 Mich App 211, 228; 646 NW2d 875 (2002). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Carines*, 460 Mich at 763, citing *United States v Olano*, 507 US 725, 731-734; 113 S Ct 1770; 123 L Ed 2d 508 (1993).

Pursuant to MCR 6.425(D), a proposed scoring of the sentencing guidelines "shall accompany the presentence report." If the trial court finds that challenged information in the presentence report is inaccurate or irrelevant, "the presentence investigation report shall be amended, and the inaccurate or irrelevant information shall be stricken accordingly before the report is transmitted to the department of corrections." MCL 771.14(6); see also MCR 6.425(E)(2). But contrary to defendant's position, "[t]here is no requirement that information to which challenges were sustained be made completely illegible at the time of sentencing, as long as [such information] is stricken and the court does not consider it." *People v Martinez (After Remand)*, 210 Mich App 199, 202; 532 NW2d 863 (1995) (quotation marks omitted), overruled on other grounds recognized by *People v Edgett*, 220 Mich App 686, 692-694; 560 NW2d 360 (1996). Further, defendant cannot establish any prejudice because there is no dispute that the trial court did not rely on the information that was crossed out. Therefore, even though the crossed-out/deleted portions of the SIR technically still were legible, defendant has failed to establish how this constitutes error, let alone plain error, and he is not entitled to any relief.

Affirmed.

/s/ Joel P. Hoekstra
/s/ Jane E. Markey
/s/ Pat M. Donofrio