# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDRE HAYNES, JR.,

        Defendant-Appellant.

UNPUBLISHED
January 12, 2017

No. 329038
Wayne Circuit Court
LC No. 15-001414-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDRE HAYNES, JR.,

        Defendant-Appellant.

No. 329101
Wayne Circuit Court
LC No. 15-001416-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDRE HAYNES, JR.,

        Defendant-Appellant.

No. 329109
Wayne Circuit Court
LC No. 15-001415-01-FC

---

Before: BOONSTRA, P.J., and CAVANAGH and K. F. KELLY, JJ.

PER CURIAM.

        Defendant was convicted in three consolidated cases following a bench trial. In LC No. 15-001414-01-FC (Docket No. 329038), the trial court convicted defendant of offenses against MC, including two counts of first-degree criminal sexual conduct (CSC-1) (penis to vagina),

-1-

MCL 750.520b, one count of CSC-1 (finger to genital opening), kidnapping, MCL 750.349, armed robbery, MCL 750.529, and felonious assault, MCL 750.82. The trial court sentenced defendant to prison terms of 60 to 120 years each for the CSC-1, kidnapping, and armed robbery convictions, and two to four years for the felonious assault conviction.

In LC No. 15-001416-01-FC (Docket No. 329101), the trial court convicted defendant of offenses against BM, including CSC-1 (finger in genital opening), armed robbery, and kidnapping. The trial court sentenced defendant to 47 to 90 years in prison for each conviction.

In LC No. 15-001415-01-FC (Docket No. 329109), the trial court convicted defendant of offenses against MT, including CSC-1 (cunnilingus), CSC-1 (penis in genital opening), CSC-1 (fellatio), kidnapping, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, felon in possession of a firearm, MCL 750.224f(2), and felon in possession of ammunition, MCL 750.224f(3). The trial court sentenced defendant to prison terms of 60 to 120 years each for the CSC-1 and kidnapping convictions, three to five years each for the felon-in-possession convictions, and five years for the felony-firearm conviction.[1]

In each case, defendant appeals as of right. We affirm defendant's convictions and sentences in each case, but remand for the limited purpose of amending the judgments of sentence to properly reflect defendant's status as a fourth-offense habitual offender.

## I. JOINDER OF CASES FOR TRIAL

On appeal, defendant argues that the trial court erred in joining all three cases for trial. In a related argument, defendant also challenges the trial court's determination that evidence relating to each victim was admissible in the cases involving the other victims pursuant to MRE 404(b)(1). We disagree with both arguments.

In *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014), this Court explained:

> Whether joinder is appropriate is a mixed question of fact and law. To determine whether joinder is permissible, a trial court must first find the relevant facts and then must decide whether those facts constitute related offenses for which joinder is appropriate. This Court reviews a trial court's factual findings for clear error and its interpretation of a court rule, which is a question of law, de novo. However, the ultimate decision on permissive joinder of related charges lies firmly within the discretion of trial courts. This Court reviews de novo questions of constitutional law. [Internal quotation marks and citations omitted.]

---

[1] The trial court granted defendant's motion for a directed verdict of a felony-firearm charge in MC's case. The trial court also found defendant not guilty of second-degree criminal sexual conduct, MCL 750.520c, in each victim's case, not guilty of felonious assault in MC's case, not guilty of felony-firearm and felon in possession of a firearm in BM's case, and not guilty of one count of CSC-1 in MT's case.

Defendant's preserved claim regarding other-acts evidence is reviewed for an abuse of discretion. *People v Gipson*, 287 Mich App 261, 262; 787 NW2d 126 (2010).

## A.  OTHER-ACTS EVIDENCE

MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

Relevant other-acts evidence is admissible unless the proponent's sole theory of relevance is to show the defendant's criminal propensity to prove that he committed the charged offenses. *People v VanderVliet*, 444 Mich 52, 63; 508 NW2d 114 (1993), amended 445 Mich 1205 (1994). Accordingly, MRE 404(b) is inclusionary rather than exclusionary.  *Id*. at 64 (citation omitted). In *People v Smith*, 282 Mich App 191, 194; 772 NW2d 428 (2009), this Court explained:

> In deciding whether to admit evidence of other bad acts, a trial court must decide: first, whether the evidence is being offered for a proper purpose, not to show the defendant's propensity to act in conformance with a given character trait; second, whether the evidence is relevant to an issue of fact of consequence at trial; third, [under MRE 403] whether its probative value is substantially outweighed by the danger of unfair prejudice in light of the availability of other means of proof; and fourth, whether a cautionary instruction is appropriate.

Our Supreme Court has explained unfair prejudice under MRE 403, stating:

> Obviously, evidence is offered by an advocate for the always clear, if seldom stated, purpose of "prejudicing" the adverse party.  Recognizing this, the Supreme Court in adopting MRE 403 identified only unfair prejudice as a factor to be weighed  against probative value.  This unfair prejudice refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock. [*People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994) (citation omitted).]

First, although defendant asserts in passing that the trial court convicted him because of his propensity to commit the crimes, the record discloses that the trial court admitted the evidence to show a common scheme, plan, or system in doing an act, which is a proper, non-propensity purpose under MRE 404(b)(1).  "[E]vidence of *sufficiently similar* prior bad acts can be used to establish a definite prior design or system which included the doing of the act charged as part of its consummation." *Smith*, 282 Mich App at 196 (internal quotation marks and citation omitted).  "[T]he result is to show (by probability) a precedent design which in its turn is to evidence (by probability) the doing of the act designed."  *Id*. (quotation marks and citation

omitted). "A high degree of similarity is required . . . but the plan itself need not be unusual or distinctive." *Id.*

In *People v Sabin (After Remand)*, 463 Mich 43, 65-66; 614 NW2d 888 (2000), our Supreme Court relied on a passage from *People v Ewoldt*, 7 Cal 4th 380; 27 Cal Rptr 646; 867 P2d 757 (Cal App, 1994), to explain:

> To establish the existence of a common design or plan, the common features must indicate the existence of a plan rather than a series of similar spontaneous acts, but the plan thus revealed need not be distinctive or unusual. For example, evidence that a search of the residence of a person suspected of rape produced a written plan to invite the victim to his residence and, once alone, to force her to engage in sexual intercourse would be highly relevant even if the plan lacked originality.

As defined by MRE 401, "relevant evidence" is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

Each of the three incidents occurred in Detroit, within approximately one month. Defendant targeted three young, black, female victims. Each victim was walking in public, in the dark. All of the victims were food-service employees, in uniform, on their way to or from work. Defendant approached each victim in a red vehicle and forced them inside by threatening them with what appeared to be a gun. Defendant took money from two of the victims. He also forced all of the victims to put their heads down in the vehicle, and cover their heads with a hood, hat, or scarf. Defendant isolated each victim in his own territory—either in his car or at his home—while he sexually assaulted them. All of his victims' clothes were removed. He fondled their breasts, and penetrated the women's orifices with his finger. In addition, he penetrated MC and MT with his penis, and washed these women afterward.

In each circumstance, defendant also attempted to bond with the victims through conversation, and even used information in two victims' phones, such as pictures and text messages, as topics of conversation. Defendant dropped two of the victims off at home, and even kissed MT goodbye and suggested that they see each other again. After defendant's first victim gave him a false name and address, defendant subsequently confiscated or photographed the remaining victims' identifications. It was not outside the range of principled outcomes for the trial court to conclude that these common features indicated the existence of a common plan.

Referencing "overkill," the thrust of defendant's claim on appeal seems to be that the trial court misapplied MRE 403's balancing test. Although all relevant evidence will be prejudicial to some extent, *People v Murphy* (*On Remand*), 282 Mich App 571, 582-583; 766 NW2d 303 (2009), the record does not establish that the other-acts evidence in this case injected considerations extraneous to the merits of the lawsuit, such as shock or bias, *Pickens*, 446 Mich at 337 (citation omitted). The fact that the trial court granted defendant's motion for a directed verdict on one charge and acquitted him of several other offenses belies any claim that the court convicted him because of the emotional impact of the other-acts evidence. In addition, defendant had a bench trial. "Unlike a jury, a judge is presumed to possess an understanding of the law,

which allows him to understand the difference between admissible and inadmissible evidence or statements of counsel." *People v Wofford*, 196 Mich App 275, 282; 492 NW2d 747 (1992). Consequently, the trial court here was presumed to consider the other-acts evidence only for its proper purpose. Accordingly, the trial court did not abuse its discretion by admitting the other-acts evidence.

## B. JOINDER

MCR 6.120 provides, in relevant part:

**(B) Postcharging Permissive Joinder or Severance.** On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

(1) Joinder is appropriate if the offenses are related. For purposes of this rule, offenses are related if they are based on

(a) the same conduct or transaction, or

(b) a series of connected acts, or

(c) a series of acts constituting parts of a single scheme or plan.

(2) Other relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of charges or the complexity or nature of the evidence, the potential for harassment, the convenience of witnesses, and the parties' readiness for trial.

As discussed earlier, defendant's acts demonstrated a single scheme or plan. Therefore, the offenses were related and joinder was appropriate. The prosecutor renewed her motion for joinder after the trial court ruled that the other-acts evidence was admissible. As a result of that ruling, the victims would have otherwise been required to testify at three separate trials. Joining the cases reduced the burden on the victims as well as other witnesses. Defendant waived his right to a jury trial and the trial court could have reasonably determined that the facts did not present the potential for its confusion. In sum, the trial court did not err by ruling that the offenses were related and joinder was not an abuse of discretion.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant argues that defense counsel was ineffective on a number of grounds. We disagree.

Because defendant did not raise this issue in a motion for a new trial or request for a *Ginther*[2] hearing our review of this issue is limited to errors apparent from the record. See *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). The United States and Michigan Constitutions guarantee a defendant the right to effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). To establish ineffective assistance of counsel, defendant must show that: "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

Defendant first claims that defense counsel was ineffective for failing to object to the prosecutor's motion to join the cases. Defendant's claim is inconsistent with the record. Defendant seems to rely on the fact that defense counsel deferred to the trial court's judgment on the motion at the June 24, 2015 hearing. But defense counsel had already refused to stipulate to joinder and obtained a preliminary ruling denying the motion at a previous hearing on June 22, 2015. In addition, even if defendant could establish that defense counsel failed to object, defense counsel would not be ineffective because joinder was proper, as discussed earlier in this opinion. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004) ("Counsel is not ineffective for failing to make a futile objection.")

In a related argument, defendant claims that defense counsel was ineffective for failing to adequately object, or to file a responsive pleading, to the prosecutor's notice of intent to use other-acts evidence under MRE 404(b). According to the lower court record, defense counsel did not file a responsive pleading, but he did argue against the motion at the June 24 hearing. And again, the evidence was properly admitted and defendant has failed to demonstrate that any additional advocacy would have affected the outcome of the proceeding.

Next, defendant argues that defense counsel failed to investigate "the cell phones and tablet in question, which Defendant had raised several times." Defendant has failed to establish a factual predicate for his claim that defense counsel did not investigate these items. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). On the contrary, the record demonstrates that cell phones and tablets were recovered during the search of defendant's home. At a motion hearing, defendant asked for the cell phones to be produced and the trial court ordered them to be handed over before the beginning of trial. Nothing in the record demonstrates that these items were not produced or that defense counsel was unaware of their contents. Rather, during procedural discussions at trial, defense counsel referenced pictures on a tablet.

In addition to failing to prove that defense counsel did not investigate the phones and tablets, defendant offers no proof that the electronics would have contained information that would have affected the outcome of the proceedings. Defendant testified at trial that he communicated with the victims before each incident and planned to have consensual sex with them. There is no record evidence that the phones or tablets had information or data to

---

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

corroborate his claims. Absent any such evidence, defendant cannot demonstrate the requisite prejudice. Therefore, this claim of ineffective assistance of counsel also fails.

Last, defendant summarily argues that defense counsel failed to investigate, offer evidence, "adequately question" defendant, or object to leading questioning and hearsay evidence introduced by the prosecutor. Defendant fails to cite to the record or provide any explanation regarding the factual basis for these claims. Although he argues that defense counsel should have questioned him further, he does not indicate what additional questions counsel should have asked or explain how additional questions would have made a difference in the case. This Court is not required to discover, rationalize, or elaborate the basis for a defendant's arguments. *People v Kevorkian*, 248 Mich App 373, 389; 639 NW2d 291 (2001) (citation omitted). Accordingly, defendant's arguments are abandoned.

### III. SENTENCING

Last, defendant argues that he is entitled to resentencing because he was not sentenced as a fourth-offense habitual offender, but the trial court nevertheless calculated his sentencing guidelines range as enhanced for a fourth-offense habitual offender. MCL 777.21(3)(c). We disagree.

In each of defendant's cases, the prosecutor notified him in the information that because of his prior convictions ("attempt possession with intent to deliver controlled substance," "robbery armed," "carjacking," and "felony-firearm"), he was subject to the penalties provided by MCL 769.12. At a pretrial hearing, the trial court required the prosecutor to explain its plea offer on the record. The prosecutor noted that defendant's guidelines as a fourth-offense habitual offender would be 270 to 900 months, and in one case, defendant was also subject to a minimum term of imprisonment of 25 years. The presentence investigation report (PSIR) prepared for defendant's sentencing noted the fourth-offense habitual offender notification in the "Evaluation and Plan," and it also listed defendant's prior convictions. At sentencing, defense counsel stated that he and defendant had reviewed the PSIR and did not request any changes.

The trial court scored the guidelines for each case separately. Although each sentencing information report states, "Habitual: No," and the probation department did not list an enhanced guidelines range when it prepared the reports, the trial court made hand corrections to each report and listed the enhanced guidelines ranges applicable to a fourth-offense habitual offender, MCL 777.21(3)(c), consistent with the filed habitual-offender notices. The parties both agreed that the guidelines ranges were appropriate. Moreover, in the cases involving MC and MT, the trial court sentenced defendant to 60 to 120 years in prison for the CSC, kidnapping, and armed robbery convictions. In the case involving BM, the trial court sentenced defendant to 47 to 90 years in prison for the same offenses. These sentences are within the enhanced guidelines ranges for a fourth-offense habitual offender, but would constitute a departure from the appropriate ranges without habitual offender enhancement. The trial court gave no indication that it intended to impose a departure sentence.

In sum, despite some inconsistencies in the record, the record indicates that the trial court and defendant were informed of defendant's habitual-offender status, and that defendant was properly sentenced as a fourth-offense habitual offender. However, because defendant's

habitual-offender status is not reflected on each judgment of sentence, we remand these cases to the trial court to correct this clerical error by amending the judgments to properly reflect defendant's status as a fourth-offense habitual offender. See MCR 7.208(A)(1) and MCR 7.216(A)(7).

We affirm defendant's convictions and sentences, but remand for the limited purpose of amending the judgments of sentence to properly reflect defendant's status as a fourth-offense habitual offender. We do not retain jurisdiction.


/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Kirsten Frank Kelly