*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMMIE LYNN MARIE BRANDT,

Plaintiff-Appellee,

v

JUSTIN MICHAEL BRANDT,

Defendant-Appellant.

UNPUBLISHED
April 08, 2025
10:57 AM

No. 372655
Montcalm Circuit Court
LC No. 2021-027778-DM

Before: GADOLA, C.J., and WALLACE and ACKERMAN, JJ.

PER CURIAM.

Defendant, Justin Michael Brandt, appeals as of right the trial court's order granting plaintiff, Jammie Lynn Marie Brandt's, motion to change custody of the parties' minor child, JB. We affirm.

## I. FACTS

Plaintiff and defendant married in September 1999 in Howard City, Michigan. During their marriage, they had five children, including JB. At the time of their divorce, two other children—SB and DB—were still minors. The parties separated in December 2020, and plaintiff filed for divorce in May 2021.

In August 2021, the trial court entered a temporary custody and parenting-time order, which awarded the parties joint legal custody of the three minor children. The order granted plaintiff primary physical custody of SB and defendant primary physical custody of DB, with each noncustodial parent receiving regular parenting time. The parties shared physical custody of JB. Defendant was awarded parenting time with JB during the week, while plaintiff had parenting time on weekends. The order further stated that the children were being homeschooled and provided that, if the parents could not agree on schooling, the children should be enrolled in their local school district. In March 2022, the trial court entered a consent judgment of divorce that incorporated the temporary custody order.

Plaintiff remained in the marital home in Howard City, and defendant moved to a home in Ionia owned by his future wife. In August 2022, plaintiff petitioned the trial court to change

-1-

defendant's custody of DB and the shared custody of JB to primary physical custody in plaintiff of both children. Following a Friend of the Court (FOC) custody investigation and a custody hearing, the trial court granted plaintiff's motion. However, in February 2023, the trial court entered a stipulated order awarding plaintiff sole legal and physical custody of DB and defendant sole legal and physical custody of JB.

Just over a year later, in February 2024, plaintiff again petitioned for a change of custody, this time seeking sole legal and physical custody of JB. Plaintiff alleged that on February 22, 2024, defendant had an argument with JB while intoxicated, during which defendant yelled at JB, threatened to beat him, and called him a profane name. JB reported the incident to a school administrator, and Children's Protective Services (CPS) investigated the incident. On February 27, 2024, plaintiff picked JB up from school and took him to her house, where he remained throughout the proceedings. In March 2024, plaintiff took JB to the hospital for complications related to cystic fibrosis. Plaintiff did not immediately notify defendant about JB's hospitalization, but, when he learned about it, he did not visit JB or participate in his care, despite being JB's legal custodian. The parties disagreed about who would provide better care for JB's serious medical condition.

Following an evidentiary hearing at which defendant declined to testify, the trial court ruled that there was proper cause and a change of circumstances, and it granted the FOC's motion to conduct a full custody investigation. Defendant moved for plaintiff to show cause why she violated the trial court's prior custody order by failing to return JB. A referee subsequently held a custody hearing and recommended that the trial court grant plaintiff physical custody of JB and that the parties share legal custody. Defendant objected to the referee's recommendation, and the trial court conducted a de novo hearing at which it also considered additional testimony from both parties. The trial court ultimately granted plaintiff's motion to change custody, ordered that JB attend school in plaintiff's district, and denied defendant's motion to hold plaintiff in contempt. This appeal followed.

## II. LEGAL PRINCIPLES IN CHILD CUSTODY APPEALS

As set forth in the Child Custody Act, MCL 722.21 *et seq.*, we must affirm a child custody order unless the trial court's factual findings were contrary to the great weight of the evidence, the trial court committed a palpable abuse of discretion, or the trial court made a clear legal error on a major issue. See MCL 722.28; *Fletcher v Fletcher*, 447 Mich 871, 876-877; 526 NW2d 889 (1994). As our Supreme Court explained in *Sabatine v Sabatine*, 513 Mich 276, 284; 15 NW3d 204 (2024):

> MCL 722.28 incorporates three standards of review into the act: (1) "a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction," *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010) (cleaned up); (2) "an abuse of discretion occurs if the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias," *Maier v Maier*, 311 Mich App 218, 221; 874 NW2d 725 (2015) (cleaned up);

and (3) clear legal error exists when "a court incorrectly chooses, interprets, or applies the law," *Fletcher*[, 447 Mich at 881].

Our Supreme Court emphasized that, by establishing standards of review that are deferential to the trial court, " 'the Legislature apparently recognized that in custody cases the proceedings themselves may jeopardize a child's welfare.' " *Sabatine*, 513 Mich at 284-285, quoting *Fletcher*, 447 Mich at 877. The *Sabatine* Court quoted with approval our Supreme Court's admonition in *Fletcher*, 447 Mich at 889-890, that appellate courts, when reviewing child custody orders, should remain mindful

> that trial courts are in a superior position to make accurate decisions concerning the custody arrangement that will be in a child's best interests. Although not infallible, trial courts are more experienced and better situated to weigh evidence and assess credibility. Trial courts not only hear testimony and observe witnesses, but also may elicit testimony, interview children, and invoke other judicial resources to assure a thorough and careful evaluation of the child's best interests.

## III. ANALYSIS

### A. FOC INVESTIGATION REPORT

Defendant contends that he is entitled to a new custody hearing because the referee erroneously admitted the FOC's investigation report as evidence. We disagree.

"The decision whether to admit evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." *Gore v Rains & Block*, 189 Mich App 729, 737; 473 NW2d 813 (1991). An abuse of discretion is "a determination that is outside the principled range of outcomes." *Herald Co v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 467; 719 NW2d 19 (2006). On the other hand, "decisions regarding the admission of evidence frequently involve preliminary questions of law, e.g., whether a rule of evidence or statute precludes admissibility of the evidence," which is reviewed de novo. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

Assuming without deciding that it was an abuse of discretion for the referee to admit the FOC investigation report,[1] we conclude that defendant is not entitled to relief on this issue. First,

---

[1] Under MRE 1101(b)(9), the Michigan Rules of Evidence "do not apply to . . . [t]he court's consideration of a report or recommendation submitted by the friend of the court under MCL 552.505(1)(g) or (h)." That suggests that FOC reports may be admissible as evidence. However, our Supreme Court has previously stated that "the report of the friend of the court is not admissible as evidence over proper objection." *Bowler v Bowler*, 351 Mich 398, 405; 88 NW2d 505 (1958). That case, however, was decided 45 years before the rules were amended to allow consideration of FOC reports. See MRE 1101, as amended March 25, 2003, 468 Mich xcv (2003). While this Court has reiterated the principle of the inadmissibility of FOC reports, citing *Bowler*, it did so "as a comparison" to its analysis of whether a guardian ad litem's report could be admitted

-3-

the hearsay in the FOC report was ultimately substantiated by testimony before the referee. The investigator, plaintiff, and defendant all testified at the custody hearing about the issues addressed in the report. Second, the evidence included a CPS investigation report that, although also hearsay, was offered for admission by defendant in its entirety.[2] The CPS report included JB's statements about defendant's behavior while consuming alcohol, statements that defendant made to JB, defendant's trouble getting JB to take his medications, and other related issues.

Third, there is no reason to conclude that any judicial officer outsourced their decision making to the FOC report. Contrary to defendant's assertions, the referee did not simply adopt the FOC investigator's recommendations. Moreover, because of defendant's objection to the referee's recommendation, which included his claim of error regarding the admission of the FOC investigation report, the trial court conducted a de novo hearing after the referee made her recommendation. Defendant does not point to any error that occurred in the trial court's de novo hearing related to the FOC report. In fact, at that hearing, the trial court agreed with defendant's concerns about hearsay in the FOC report and repeatedly stated that it would base its best-interest findings only on admissible evidence, not hearsay. The trial court took additional testimony from both parties to establish additional facts necessary for its decision. After thoroughly reviewing those facts, the trial court concluded that, based on the properly received evidence, a change of custody was in JB's best interests. "Unlike a jury, a judge is presumed to possess an understanding of the law, which allows him to understand the difference between admissible and inadmissible evidence or statements of counsel." *People v Wofford*, 196 Mich App 275, 282; 492 NW2d 747 (1992). Even before considering the deferential standard of review under MCL 722.28, we conclude that defendant is not entitled to relief on this issue.

## B. HEARSAY TESTIMONY

Defendant also claims that we should order a new custody hearing because the FOC investigator's testimony included inadmissible hearsay. Again, we disagree.

Under MRE 802, hearsay evidence is not admissible unless it falls within a specific exception. We agree that the FOC investigator offered hearsay testimony regarding defendant's behavior when under the influence of alcohol. However, other admissible evidence established defendant's conduct while intoxicated. Again, defendant moved for the admission of the CPS report, which documented JB's disclosures that defendant drank alcohol and then drove JB; that defendant was intoxicated during the February 2024 argument; and that, during that argument,

---

into evidence, seemingly making it nonbinding dicta. See *Kuebler v Kuebler*, 346 Mich App 633, 660; 13 NW3d 339 (2023). But see 3 Longhofer, Michigan Court Rules Practice, Evidence (4th ed, 2024 update), § 1101.4, p 32 (citing *Kuebler* as authoritative for the inadmissibility of FOC reports). In light of this uncertainty, and because it does not affect the outcome, we assume for the sake of argument that the referee erred in admitting the FOC report.

[2] To the extent that defendant's argument can be read to include an objection to evidence from the CPS investigation report, "[a] party who expressly agrees with an issue in the trial court cannot then take a contrary position on appeal." *Grant v AAA Mich/Wis, Inc (On Remand)*, 272 Mich App 142, 148; 724 NW2d 498 (2006).

defendant yelled at JB and threatened to beat him. JB also reported to CPS that, on previous occasions, defendant had thrown objects, broken video games, and knocked over furniture. Additionally, JB recounted that in December 2023, he had to help his stepmother—defendant's wife—put defendant to bed after finding him intoxicated and lying on the floor.

Defendant also argues that the FOC investigator offered hearsay testimony about defendant's mental health. However, the referee explicitly concluded in her best-interest findings that neither party had a mental-health issue. Therefore, to the extent that defendant suggests that inadmissible testimony led the referee to erroneously conclude that defendant had a mental-health problem, his assertion is contrary to the record.

Defendant is correct that the FOC investigator's testimony was hearsay insofar as she stated that plaintiff received a text message from JB about helping to put defendant to bed while he was intoxicated. Plaintiff also testified that JB messaged her that he cut his hand while moving defendant. However, the referee explicitly stated on the record that she would not consider statements made by JB in text messages because they constituted hearsay. In the absence of any reason to question the referee's statement, we presume under *Wofford* that the referee followed the law. To that end, we note that the referee did not reference the text messages in her findings of fact or in her analysis of JB's best interests.

As with the FOC report, defendant noted his objections to the referee's custody hearing, and the trial court conducted a de novo hearing at which it recognized that defendant raised reasonable concerns about hearsay evidence being admitted during the custody investigation. Subsequently, the trial court clarified that it would not consider hearsay evidence in its findings, gathered additional evidence from the parties, and conducted a de novo review. Despite defendant's claims of error about the referee hearing, he does not assert any argument that the trial court improperly considered inadmissible evidence at the de novo review. Accordingly, defendant is not entitled to relief on this basis.[3]

## C. DECISION TO CHANGE JB'S SCHOOL

Defendant further claims that the trial court abused its discretion by ordering that plaintiff could enroll JB in a high school in the Howard City or Lakeview School District when JB was attending school in Ionia. Again, we must affirm a child custody order on appeal unless the trial court's factual findings were against the great weight of the evidence, the trial court committed a palpable abuse of discretion, or the trial court made a clear legal error on a major issue. See MCL 722.28; *Fletcher*, 447 Mich at 876-877.

---

[3] Defendant makes a cursory argument that the referee and trial court should not have considered his decision not to participate in the FOC investigation when they considered JB's best interests. Defendant provides no factual analysis, reasoning, or legal citation to support his assertion. "It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). This issue is abandoned.

Undisputed evidence established that plaintiff had to drive an hour in each direction to take JB to school in Ionia, where defendant moved after separating from plaintiff. Plaintiff took JB to school in Ionia between February 2024 and June 2024, and she also enrolled him in the same Ionia school for the fall semester in 2024. At the de novo hearing, plaintiff testified that, in her opinion, JB would prefer to attend school closer to home and that the distance was burdensome for the family.

The trial court noted that the referee carefully considered all the best-interest factors, and JB did not have a significant history in any public school district because he had been homeschooled for most of his life. The trial court further noted the difficulties plaintiff faced in transporting JB to and from school each day due to the distance. Defense counsel contended that plaintiff should have filed a separate motion to change JB's school, but the trial court disagreed, emphasizing that defense counsel knew that plaintiff was seeking sole physical custody of JB. Given the distance between plaintiff's and defendant's homes, it was likely that a change in custody would affect JB's schooling. Consequently, the trial court stated that defendant should have presented evidence supporting his claim that remaining in Ionia schools was in JB's best interests, which he failed to do. Ultimately, the trial court ruled that, in determining that a change in custody served JB's best interests, along with the considerable distance and defendant's lack of parenting time with JB, it was in JB's best interests to enroll him in a school in plaintiff's district.

Defendant has not shown that the trial court's findings were contrary to the great weight of the evidence. No evidence indicated that it was in JB's best interests to remain in the Ionia School District, and ample evidence showed that JB would benefit from attending school closer to home to avoid a two-hour daily commute to a different district. Accordingly, defendant is not entitled to relief on this issue.[4]

Affirmed.

/s/ Michael F. Gadola
/s/ Randy J. Wallace
/s/ Matthew S. Ackerman

---

[4] As with the dispute over defendant's non-participation in the FOC investigation, defendant also makes a cursory argument that the trial court should have held plaintiff in contempt for failing to abide by that court's order when she picked JB up from school and did not return him to defendant under the terms of the custody order. Once again, defendant's failure to cite any authority means we consider this issue abandoned.